#4                           15JF                        FEE PAID

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF PENNSYLVANIA

DAVID R. KAUFFMAN

Plaintiff,

-v-

Barry Smith, ERIC Young, BORDAS, PEACOCK, EISENBERG, KORB, KNAPP, BUSKIRK, ROUSELL, GONDER, CARTWRIGHT, BARTLEY, FOX, JOHN DOE #5, JOHN DOE #6, JOHN DOE #7, JOHN DOE #8, JOHN DOE #9, JANE DOE #2, UM YOUNGFLESH, BLAKE, PIERCE, sued in their individual capacities, and LAURELL HARRY, GEORGE LITTLE, MHM, ALTHIA O. BENNETT, KERI MOORE, DORINA VARNER, SCOTT KUNE-FELTER, RANDY IRWIN, MICHELLE M. IVICIC, M. BLICHA, MILLER, I. GUSTAFSON, TERRI SECHRENGOST, JENNIFER LIGAS, DR. BLOOM, VINCENT DEFELICE, TIMOTHY LITTLE, MICHEAL A. LUMMINS, SEAN BRESNAHAN, SIMMONS, LUCINDA GAILEY, RICHARD MOONEY, HARDY, TIMOTHY MCDOWELL, JEREMY JONES, T. JAMES, M. MCCOY, F. VAN DYCHE, ENGLISH, BUTERBAUGH, LARRY MATTEWS, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN/JANE DOE #4, NEIDWICH, TOTE, HAWALYK, MORRIS, K.J. PATRICK, CO BLOOM, OLSEN, JANE DOE #1, COURTNEY LOWERY, CELINE KEITH, WELLS, ANTONUCCIO, MOHNEY, WALKER, MARSH, MOSLAK, FISCUS, FREDDIE NUNEZ, LESKO, SLAYDER, sued in their individual and official capacities.

Defendants.

Case No. 3:23-CV-239

Hon.

CIVIL RIGHTS COMPLAINT (§1983)

Trial by Jury Demanded

FILED

OCT 03 2023

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

## Introduction

1. This is a civil rights action filed by David Kauffman, a state prisoner, for damages, injunctive relief, and a declaratory judgement under 42 U.S.C. §1983 alleging misuse of force, denial of medical care, and retaliation in violation of the Eighth Amendment and the First Amendment to the United States Constitution; confinement in segregation in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the right to be free from retaliation under the First Amendment to the United States Constitution; multiple intentional mail interferences regarding delivery of legal mail and outgoing mail resulting from an unlawful policy, practice, and custom in violation of the First Amendment, Fourth Amendment, and the Fourteeth Amendment to the United States Constitution; a retaliatory revocation of single cell status ("z-code") and placement in a double cell in violation of the Eighth Amendment and the First Amendment to the United States Constitution; a retaliatory transfer from SCI-Houtzdale to SCI-Forest in violation of the First Amendment to the United States Constitution; a retaliatory transfer from SCI-Quehanna to SCI-Houtzdale in violation of the First Amendment to the United States Constitution; unconstitutional prison conditions in violation of the First Amendment to the United States Constitution and the Eighth Amendment to the United States Constitution; and theft of property and legal materials in violation of First Amendment, the Fourth Amendment, the Eighth Amendment, and the Fourteenth Amendment to the United States Constitution. The plaintiff also alleges the torts of intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and assualt and battery under the law of Pennsylvania. The plaintiff alleges that all these constitutional violations and torts result from an overarching, collectively agreed-upon course of unlawful conduct intended to cover-up official malfeasance — a policy and practice promulgated by the supervisory defendants sued herein.

## Jurisdiction

2. The Court has jurisdiction over the plaintiff's claims of violation of federal constitutional rights under 42 U.S.L. § 1331(i) and 1343.

3. The Court has jurisdiction over the plaintiff's claim for injunctive relief under 28 U.S.L. §1651.

4. The Court has supplemental over the plaintiff's state law tort claims under 28 U.S.L. §1367.

5. The Court has jurisdiction over the plaintiff's claim for a declaratory judgement under 28 U.S.L. § 2201.

## Parties

6. The plaintiff, David R. Kauffman, was incarcerated at State Correctional Institution Houtzdale ("SCI-Houtzdale"), 209 Institution Drive, Houtzdale, Pennsylvania 16698, during the events described in this complaint, and was recently transferred to State Correctional Institution Forest ("SCI-Forest"), P.O. Box 945, 286 Woodland Drive, Marienville, Pennsylvania 16239, where he currently resides.

7. Defendant Laurell Harry is the Secretary of Pennsylvania Department of Corrections employed at 1920 Technology Parkway, Mechanicsburg, PA 17050. She is sued in her individual and official capacity.

8. Defendant George Little was the Secretary of Pennsylvania Department of Corrections employed at 1920 Technology Parkway, Mechanicsburg, PA 17050. He is sued in his individual and official capacity.

9. Defendant Althia O. Bennett is/was State Inspector General of Pennsylvania or chief cousel employed at 555 Walnut Street, 8th Floor, Harrisburg, PA 17101. She is sued in her individual and official capacity.

10. Defendants Keri Moore and Dorina Varner are the Chief Grievance Coordinators of Pennsylvania Department of Corrections employed at 1920 Technology Parkway, Mechanisburg,

10. Defendant Scott Klinefelter is the Superintendant of SCI-Houtzdale, P.O. Box 1000, 209 Institution Drive, Houtzdale, PA 16698, and is responsible for reviewing all administrative appeals of grievances and disciplinary appeals filed by SCI-Houtzdale inmates. He is sued in his individual and official capacity.

11. Defendant Barry Smith was the Superintendant of SCI-Houtzdale, P.O. Box 1000, 209 Institution Drive, Houtzdale, PA 16698, and was responsible for reviewing all administrative appeals of grievances and disciplinary charges filed by SCI-Houtzdale inmates. He is sued in his individual and official capacity.

12. Defendant Randy Irwin is the Superintendant of SCI-Forest, P.O. Box 945, 286 Woodland Drive, Marienville, PA 16239, and is responsible for reviewing all administrative appeals of grievances and disciplinary charges filed by SCI-Forest inmates, as well as ensuring z-code status. He is sued in his individual and official capacity.

13. Defendant Michelle M. Ivicic is the Deputy Superintendant of Centralized Services at SCI-Houtzdale, P.O. Box 1000, 209 Institution Drive, Houtzdale, PA 16698, and is in charge of the supervision and discipline of all medical staff at SCI-Houtzdale and is generally responsible for ensuring provision of medical care and z-code status to prisoners at SCI-Houtzdale. She is sued in her individual and official capacity.

14. Defendants M. Blicha and I. Gustafson are/were the Deputy Superintendant of Centralized Services at SCI-Forest, P.O. Box 945, 286 Woodland Drive, Marienville, PA 16239, and are/were in charge of supervision and discipline of all medical staff at SCI-Forest and are/were generally responsible for ensuring provision of medical care and z-code status to prisoners at SCI-Forest. They are sued in their individual and official capacities.

15. Defendant Terri Sechrengost is the Corrections Health Care Administrator at SCI-Houtzdale, P.O. Box 1000, 209 Institution Drive, Houtzdale, PA 16698, and is frequently relegated to review administrative appeals of grievances filed by SCI-Houtzdale inmates, and is in charge of supervision and discipline of all medical staff at SCI-Houtzdale, and is generally responsible

for ensuring provision of medical care to prisoners at SCI-Houtzdale. She is sued in her individual and official capacity

16. Defendant Mental Health Management("MHM"), 1013 Mumma Road, Suite 303, Wormleyburg, PA 17043, is a private company contracted with the Pennsylvania Department of Corrections to provide psychiatric care to Pennsylvania Department of Corrections inmates. It is sued in its individual and official capacity.

17. Defendants Jennifer Ligas and Dr Bloom are psychiatrists employed by MHM, 1013 Mumma Road, Suite 303, Wormleyburg, PA 17043, and are contracted through MHM to provide psychiatric care to prisoners at SCI-Houtzdale, P.O. Box 1000, 209 Institution Drive, Houtzdale, PA 16698. They are sued in their individual and official capacities.

18. Defendant Vincent Defelice is a unit manager in charge of D unit at SCI-Houtzdale, P.O. Box 1000, 209 Institution Drive, Houtzdale, PA 16698, and is responsible for ensuring z-code status to prisoners at SCI-Houtzdale. He is sued in his individual and official capacity.

19. Defendant Miller is a unit manager in charge of E unit at SCI-Forest, P.O. Box 945, 286 Woodland Drive, Marienville, PA 16239, and is responsible for ensuring z-code status to prisoners at SCI-Forest. He is sued in his individual and official capacity.

20. Defendant Timothy Little is a correctional counselor in charge of D unit at SCI-Houtzdale, P.O. Box 1000, 209 Institution Drive, Houtzdale, PA 16698, and is responsible for ensuring z-code status to prisoners at SCI-Houtzdale. He is sued in his individual and official capacity.

21. Defendant Micheal A. Cummins is a correctional counselor in charge of F unit at SCI-Forest, P.O. Box 945, 286 Woodland Drive, Marienville, PA 16239, and is responsible for ensuring z-code status to prisoners at SCI-Forest. He is sued in his individual and official capacity.

22. Defendant Sean Bresnahan is the Licensed Psychology Manager at SCI-Houtzdale, P.O. Box 1000, 209 Institution Drive, Houtzdale, PA 16698. He is sued in his individual and

official capacity.

23. Defendant Simmons is the Licensed Psychology Manager at SCI-Forest, P.O. Box 945, 286 Woodland Drive, Marienville, PA 16239, and is responsible for ensuring z-code status to prisoners at SCI-Forest. He is sued in his individual and official capacity.

24. Defendant Lucinda Gailey is the mail room supervisor of SCI-Houtzdale, P.O. Box 1000, 209 Institution Drive, Houtzdale, PA 16698, and is responsible for ensuring prompt and proper delivery of prisoners' legal mail and generally all mail at SCI-Houtzdale, and is in charge of supervision and discipline of all mailroom staff at SCI-Houtzdale. She is sued in her individual and official capacity.

25. Defendants Jane Doe/John Doe #4 and Neidwich are mailroom staff employed at SCI-Houtzdale, P.O. Box 1000, 209 Institution Drive, Houtzdale, PA 16698. They are sued in their individual and official capacities.

26. Defendant Richard Mooney is a correctional captain in charge of the Restricted Housing Unit at SCI-Houtzdale, P.O. Box 1000, 209 Institution Drive, Houtzdale, PA 16698. He is sued in his individual and official capacity.

27. Defendant Timothy McDowell is a correctional captain employed at SCI-Houtzdale, P.O. Box 1000, 209 Institution Drive, Houtzdale, PA 16698, and is responsible in charge of the supervision and discipline of all correctional security staff at SCI-Houtzdale, and is specifically responsible for discipline of correctional security staff who interfere with delivery of prisoners' legal mail at SCI-Houtzdale. He is sued in his individual and official capacity.

28. Defendant Jeremy Jones is a correctional shift commander employed at SCI-Houtzdale, P.O. Box 1000, 209 Institution Drive, Houtzdale, PA 16698. He is sued in his individual and official capacity.

29. Defendant J. James is a correctional supervisor employed at SCI-Houtzdale, P.O. Box 1000, 209 Institution Drive, Houtzdale, PA 16698, and is specifically responsible for discipline of all correctional security staff who interfere with delivery of prisoners' legal mail at SCI-Houtzdale. He is sued in his individual and official capacity.

30. Defendants McCoy and English are correctional lieutenants employed at SCI-Houtzdale, P.O. Box 1000, 209 Institution Drive, Houtzdale, PA 16698, and are in charge of the supervision and discipline of all correctional security staff at SCI-Houtzdale, and are specifically responsible for discipline of correctional security staff who interfere with delivery of prisoners' legal mail at SCI-Houtzdale. They are sued in their individual and official capacities.

31. Defendants E. Van Dyche, Buterbaugh, and Larry Matthews are correctional lieutenants in charge of the Restricted Housing Unit at SCI-Houtzdale, P.O. Box 1000, 209 Institution Drive, Houtzdale, PA 16698. They are sued in their individual and official capacities.

32. Defendants John Doe #2, John Doe #3, Tote, Kawalyk, Morris, R.J. Patrick, CO Bloom, and Olsen are correctional officiers employed at SCI-Houtzdale, P.O. Box 1000, 209 Institution Drive, Houtzdale, PA 16698. They are sued in their individual and official capacities.

33. Defendant Eric Young is a correctional sergeant employed at SCI-Houtzdale, P.O. Box 1000, 209 Institution Drive, Houtzdale, PA 16698. He is sued in his individual capacity.

34. Defendant Hardy is a correctional sergeant employed at SCI-Houtzdale, P.O. Box 1000, 209 Institutional Drive, Houtzdale, PA 16698. He is sued in his individual and official capacity.

35. Defendants Bordas, Peacock, Pierce, Eisenberg, Korb, Buskirk, Rousell, Gorodek, Cartwright, Fox, and Bartley are correctional officers employed at SCI-Houtzdale, P.O. Box 1000, 209 Institution Drive, Houtzdale, PA 16698. They are sued in their individual capacities.

36. Defendants Courtney Lowery and Jane Doe #1 are correctional registered nurses employed at SCI-Houtzdale, P.O. Box 1000, 209 Institution Drive, Houtzdale, PA 16698. They are sued in their individual and official capacities.

37. Defendant John Doe #1 is a physician employed at SCI-Houtzdale, P.O. Box 1000, 209 Institution Drive, Houtzdale, PA 16698. He is sued in his individual and official capacity.

38. Defendant Celine Keith is a psychological services specialist employed at SCI-Houtzdale, P.O. Box 1000, 209 Institution Drive, Houtzdale, PA 16698, and is generally responsible for referring prisoners to a psychiatric provider when they need psychiatric care. She is sued in her individual and official capacity.

39. Defendant Wells is a correctional sergeant employed at SCI-Forest, P.O. Box 945, 286 Woodland Drive, Marienville, PA 16239. He is sued in his individual and official capacity.

40. Defendants Knapp, John Doe #5, John Doe #6 are correctional ~~officers~~ officers employed at SCI-Forest, P.O. Box 945, 286 Woodland Drive, Marienville, PA 16239. They are sued in their individual and ~~official~~ capacities.

41. Defendant John Doe #7 is a correctional lieutenant employed at SCI-Forest, P.O. Box 945, 286 Woodland Drive, Marienville, PA 16239. He is sued in his individual capacity.

42. Defendant Mohney is a correctional officer employed at SCI-Forest, P.O. Box 945, 286 Woodland Drive, Marienville, PA 16239. He is sued in his individual and official capacity.

43. Defendant Antonuccio is a correctional registered nurse employed at SCI-Forest, P.O. Box 945, 286 Woodland Drive, Marienville, PA 16239. She is sued in her individual and official capacity.

Facts

44. Plaintiff has a sweeping history of mental health problems, which compelled his family practitioner to prescribe him a daily dosage of Seroquil 250 mg, Klonopin 4mg, and Efexer for anxiety, PTSD, paranioa, and episodic challenges to his mental health, and resulted in his admission to York County Hospital two months before his arrest, where medical staff employed a shot of Thorzine into his left leg in order to subdue him then strapped him down to a gurney and transfered him to by ambulance to Bellemonte Behavioral Hospital in Philadelphia, PA, where he was evaluated and observed critically by medical staff for psychiatric reasons.

45. After doing time in Bellemont Behavioral Hospital (a psych-ward), the plaintiff was living in the streets of Lancaster, PA because of his unmanageable, unpredictable, and unstable mental health problems, and was eventually taken into custody by the police and charged with criminal trespass when he arrived at his parents property to aquire his clothes.

46. The plaintiff warrented the classification of being a danger to himself or others by prison officials at Lancaster County Prison, who kept him restrained in the Mental Health Unit because of his mental health problems.

47. The plaintiff was banned from presenting a plea of guilty or not guilty in court by the Honorable Judge Jeffery Wright, who impulsively sentenced him to serve two-five years in SCI and Court Ordered a "Psychological Program in SCI."

48. In August 2020, when the plaintiff was assessed at SCI-Camp Hill, two psychiatrists employed by defendant MHM abruptly discontinued his powerful psychiatric medication, Seroquil 250mg, and then replaced the Seroquil with Remoran.

49. In March 2021, while incarcerated in the Pennsylvania Department of Corrections, the plaintiff was required to complete a "mental health program" by the Bureau of Community Corrections.

50. On October 4, 2021, Psychologist Hartman referred the plaintiff to Certified Registered Nurse Practitioner Knowles for a medication increase after he complained about increased anxiety and PTSD.

51. On this same day, the plaintiff was evaluated by CRNP Knowles, who then referred him to defendant Ligas to increase the dosage of his prescribed psychiatric medication, Remoran 30mg.

52. On October 5, 2021, defendant Ligas met the plaintiff in the medical triage and her eyes were blood shot red and her speech was slurred so much that the plaintiff could barely understand what she was saying: defendant Ligas was under the influence of drugs or alcohol and incapable of adjusting plaintiff's psychiatric medication correctly.

53. Because of her intoxication, the plaintiff did not trust defendant Ligas enough to adjust his psychiatric medication, so he told defendant Ligas, "Leave my medication alone. Now can I go back to my housing unit?"

54. Defendant Ligas said: "No, discontinuing your medication until you learn how to speak to me."

55. When the plaintiff told defendant Ligas that he needs his medication because he will become paranoid, anxious, unable to sleep, and unable to regularly function without his medication, defendant Ligas said, "I'm discontinuing your medication and I don't care if you go to the RHU."

56. Contrary to the recommendations by PSS Hartman and CRNP Knowles, who referred plaintiff to defendant Ligas for a medication increase, defendant Ligas discontinued his medication, Remoran 30mg, and left him suffering serious mental health problems without providing treatment of any type.

57. Defendant Ligas accused the plaintiff in his medical records of being "demanding, inappropriate, and non-compliant," and used those accusations as a reason to justify discontinuing his medication.

58. Between the dates August 2020 - October 5, 2021, the plaintiff maintained on Remoran without having any other psychiatrist interfere with the medication once prescribed by a psychiatrist, until defendant Ligas discontinued his medication on October 5, 2021.

59. Defendant Ligas abandoned all of the plaintiff's follow up evaluations and failed to follow up with him at all after she discontinued his medication.

60. As a result of the actions of defendant Ligas, the plaintiff suffered horrendous withdrawl symptoms, including becoming violently physically ill, teeth grinding resulting in a chipped tooth, drenching night sweats, constipation causing his reckum to painfully bleed, difficulty breathing causing dizziness and fainting, chest pain similar to a heart attack, body soreness and aches, nausea, severe migraine headaches causing a disabling affect, weakness, fatigue, loss of appetite resulting in inability to eat and loss of twenty-one pounds in less then two weeks, long term physical deteriation resulting in long term mental deteriations, diminished quality of life, severe depression resulting in three suicide attempts causing a stiff neck; and increased anxiety, PTSD, paranoia, blackouts, psychotic episodes, and cognitive dysfunction.

61. The plaintiff then began refusing cell mates because of increased anxiety, PTSD, and psychotic episodes resulting in violence with cell mates; simultaneously, he requested a a single cell status "z-code" from the Psychiatric Review Team ("PRT") consisting of, among other staff, defendants Bresnahan and Dr. Bloom.

62. On November 25, 2021, the plaintiff was coerced by the RHU guards to move into a double cell with a strange prisoner whom plaintiff immediately assualted until the guards employed an intolerable amount of Oleoresin capsicum ("O.C") spray into the cell which caused his eyes and skin to burn for two weeks and inability to breathe.

63. The plaintiff was then placed into a single cell and denied a shower for four days.

64. After the plaintiff complained to defendants Smith and Ivicic (through a misconduct appeal) about issues he had when he lived in a cell with another person, and by virtue of defendant Timothy Little's recommendation for single cell status, the plaintiff was issued a z-code.

65. In January 2022, defendant Dr. Bloom came to the plaintiff's cell door and said, "The COs said that you refused to attend your psychiatric evaluation."

66. Being housed in the RHU at this time, the plaintiff told defendant Dr. Bloom that he was unaware that an evaluation was scheduled to occur on this day because the COs did not tell him about this evaluation, nor did they ever come to his cell door at all.

67. When the plaintiff had told defendant Dr. Bloom that he was trying to see a psychiatrist ever since defendant Ligas discontinued his medication which resulted in serious psychiatric complications, defendant Dr. Bloom said that he did not have clinical charts with him but would follow up in a week.

68. Instead of following up, defendant Dr. Bloom accused the plaintiff in medical records of being "belligerent," and then pushed back his psychiatric evaluation without following up.

69. On Febraury 22, 2022, defendant Bordas came to the plaintiff's cell door and said: "Are you attending your psychiatric evaluation with PRT?"

70. Already standing at his cell door, the plaintiff immediately shook his head yes and told defendant Bordas, "Yeah, I'm going."

71. Defendant Bordas said: "No your not," and left.

72. The plaintiff waited at his cell door fully dressed for three hours, but defendant Bordas did not pull him out of his RHU cell to attend his psychiatric evaluation with PRT.

73. The plaintiff's serious psychiatric condition was known by defendant Bordas, who recognized and took notice of his need for psychiatric care by way of the manifestation and significance of the evaluation— i.e., an extraordinary psychiatric evaluation managed by PRT, which consisted of the LPM, defendant Bresnahan; PSS Edwards; PSS Dubler; a psychiatric provider, defendant Dr. Bloom; and ordinarily the entire unit team; and occasionally the deputy superintendant and superintendant, and for which is designed to accomodate important psychiatric needs like the plaintiff's untreated anxiety, PTSD, paranoia, and psychotic episodes which has resulted in violence with cell mates.

74. The actions of defendant Bordas resulted in an unnecessary delay of psychiatric care and caused the plaintiff undo psychological and physical trauma/deterioration, exacerbation of his psychiatric conditions,

suicide attempts which caused injuries to his neck, and contributed to all the damages described throughout this complaint with respect to delayed psychiatric care by defendants Dr. Bloom, Ligas, Keith, Korb, Peacock and Eiselberg.

75. On February 24, 2022, the plaintiff put grievance 969545 into the prison mailbox, grieving the failure of defendant Bordas to pull him out of his cell for the psychiatric evaluation, and the failure of the psychology department to provide appropriate mental health care.

76. On February 28, 2022, Administrative Officer Susan Hnatkovich officially filed grievance 969545 into the Automated Inmate Grievance Tracking System, and then the plaintiff recieved the Pink Action Return Slip dated February 28, 2022 and signed by Administrative Officer Susan Hnatkovich.

77. On March 1, 2022, a day after the official filing of grievance 969545, defendant Keith came to the plaintiff's cell door and snarled: "Your grievance is bullshit. What's your fucking problem?"

78. The plaintiff told defendant Keith not to take the fact that he filed the grievance against her so personal, and pointed out that he had filed the grievance against her because he urgently needed psychiatric medication for his anxiety, paranoia, PTSD, and psychotic episodes and suffered awful side affects such as blackouts and deterioration of physical and mental health that resulted in suicide attempts since defendant Ligas had discontinued his psychiatric medication on October 5, 2021.

79. While the plaintiff was telling defendant Keith all these mental health concerns, defendant Keith was rolling her eyes and sucking her teeth at the plaintiff.

80. Defendant Keith said: "Your psychiatric evaluation was scheduled to occur this month, but you like to file grievances against me. So your upcoming evaluation is terminated until you stop," and walked away.

81. After she left the plaintiff's cell door, defendant Keith stopped at the exit door of the BHU pod, glared up at the plaintiff's top tier cell, and stated, "Watch what happens," and left.

82. On this same day, defendant Keith returned to her office and pushed back the plaintiff's upcoming psychiatric evaluation in retaliation for his filing of grievance 969545.

83. As a result of the actions of defendant Keith, the plaintiff suffered a psychotic breakdown from the lack of psychiatric care and attempted suicide when he hung himself from his cell light with ripped sheets and

nearly choked to death which caused inability to breath, respiratory difficulties, prolonged chest pain similar to a heart attack, that persists. to date, dizzy spells, migraine headaches that caused a disabling affect, coughing up blood that persisted everday for a month, fainting, nausea, nausea, and a permanent twitch to his left eye.

84. While he hung from his cell light, the plaintiff lost consciousness and then fell down onto the concrete ground which caused an abrasion and severe pain to his left knee and diminished mobility; an abrasion and sore-ness to his left elbow, diminished mobility, and severe pain that persisted for two weeks; a concussion and swelling on his head that resulted in dizziness, migraine headaches, and blackouts; and neck pain that persisted for two weeks and caused inability to move, sleep, or eat.

85. The plaintiff's physical deteriation was so severe that the physical deteriation caused long term, agonizing psychological and emotional deteriation; diminished quality of life; loss of substantial weight and muscle atrophy; inability to take showers, brush his teeth, clean his cell, or wash his clothes.

86. The lack of psychiatric care for plaintiff's PTSD and psychotic episodes has physically affected the chemical balance in his brain, which caused the exacerbation of his illness; permanent brain damage; cognitive dysfunction; increased anxiety and paranoia; inability to sleep that persisted for days at a time; hallucinations; blackouts; and psychotic episodes and PTSD that caused his head and body to bang off the walls; and un-warrented physical injury such as injuries to his wrists, knuckles, and feet when he punched and kicked the walls in his sleep.

87. On March 15, 2022, during a psychiatric evaluation with P.R.T, the plaintiff sat down in a chair directly accross from defendant Dr. Bloom; requested medication for his anxiety, PTSD, paranoia, and psychotic episodes; requested psychotheropy; and conveyed his court order signed by the Honorable Judge Jeffery Wright that evidenced his psychiatric need for placement in a "Psychological Program in SCI."

88. Without saying anything, defendant Dr. Bloom left the room, never returned to complete an evaluation, and left the plaintiff in the room with defendant Bresnahon and PSS Dukler, who are not licensed to prescribe psychiatric medication to prisoners at SCI-Houtzdale.

89. When the plaintiff complained that defendant Dr. Bloom had intentionally avoided him since defendant

Ligas discontinued his prescribed Remeron, defendant Bresnahan said, "Dr. Bloom is busy helping other inmates but some-bebody will follow up with you shortly for a course of psychotherapy."

90. When defendant Bresnahan asked him why he was assaulting all his cell mates, the plaintiff said that he cannot live peacefully, non-belligerently, and non-violently in a cell with another person under any circumstances because of his PTSD, paranoia, anxiety, and episodic challenges which has resulted in violence with cellmates, and his inability to cope with a cell mate.

91. On March 21, 2022, defendant Ivicic denied grievance 969545 and all requested relief on these grounds: "Kauffman was offered a psychiatric evaluation but denied the opportunity to attend, and he is being followed by psychology."

92. Pursuant to prison procedure, the plaintiff filed an administrative appeal for grievance 969545 with defendant Smith, pointing out that defendant Bordas denied him the opportunity to attend the evaluation; that defendant Korb was also denying him evaluations; that defendants Ligas, Bloom, and Keith were refusing to provide psychiatric care/services; and that he was incompetent to live within in a cell with another person because of his PTSD, anxiety, paranoia, and psychotic episodes that resulted in violence with cellmates,

93. In March, 2022, defendant Smith denied the plaintiff's appeal for grievance 969545 and all requested relief on these grounds: "The laws and facts have no bearing as they are based solely on Kauffman's accusations that have no merit to them."

94. Pursuant to prison procedure, the plaintiff filed an administrative appeal for grievance 969545 with defendands Moore and Varner, pointing out that defendants Smith and Ivicic were liable with defendants Dr. Bloom, Ligas, and Keith for their failure to ensure that psychiatric care was provided for the plaintiff.

95. Defendants Varner and Moore denied the plaintiff's appeal for grievance 969545 on these grounds: "The responses provided were satisfactory."

96. On March 30, 2022, the plaintiff filed grievance 973392, grieving retaliation by defendants Dr. Bloom and Keith; denial of prescribed psychiatric medication by defendants Ligas, Dr. Bloom, and Keith; fabrication of his medical records by defendants Dr. Bloom, Ligas, and Keith; and that defendants Smith, Ivicic, Bresnahan, Defelice, and Timothy Little were ordering defendants Ligas, Dr. Bloom, and Keith to deny him psychiatric care.

97. On March 30, 2022, the plaintiff also sent a request slip to defendant Smith, pointing out that, among other RHU guards, defendant Korb was denying him access to a psychiatric provider by refusing to pull him out of his RHU cell to attend his evaluations with defendant Dr. Bloom, and that irrespective of defendant Korb's negligence, defendants Dr. Bloom, Ligas, and Keith were failing to provide psychiatric care.

98. On April 1, 2022, defendant Smith replied to the request slip, asserting that the plaintiff was "being treated accordingly."

99. The plaintiff's filing of grievance #973392 against defendant Keith compelled defendants Smith, Ivicic, Sechrengost, and Bresnahan to order supervision of defendant Keith by PSS Olbert, who kept an eye on defendant Keith day in and day out while she did her daily rounds in the RHU.

100. These orders by defendants Smith, Ivicic, Sechrengost, and Bresnahan provoked additional retaliation by defendants Keith and PSS Olbert, who then willfully began to ignore the plaintiff's mental health concerns and fabricate his medical records, reporting that he did not have any mental health concerns, notwithstanding the plaintiff was speaking to them about his mental health concerns each and everyday from the dates March 30, 2022 – August 2022, excluding Saturdays, Sundays, and Mondays.

101. On April 5, 2022, defendant Korb came to the RHU pod carrying a clipboard and began to ask other inmates if they wanted to attend their psychiatric evaluations with defendant Dr. Bloom.

102. While the plaintiff was sitting at his desk in his cell, defendant Korb had stopped at the side of his cell door for approximately two seconds and then walked away without saying anything to the plaintiff.

103. Because the RHU guards denying him psychiatric evaluations in the RHU was a known, perpetuated practice at this juncture, the plaintiff immediately went to his cell door and screamed this to defendant Korb: "Korb, if that list says I'm supposed to see Dr. Bloom today then you had better pull me out this cell."

104. About two minutes later Standing at the bottom tier, defendant Korb briefly glanced up at the plaintiff's top tier cell and said, "Your not going anywhere because you filed paperwork."

105. About ten minutes later, defendants Peacock and Eisenberg came to the plaintiff's cell door and directed him to cuff up because he had a x-ray appointment with a x-ray technician for self-inflicted injuries to his wrists, neck, and head caused by his untreated mental health problems.

106. Before the plaintiff went to the door to be restrained, he told defendants Peacock and Eisenberg: "I have a psychiatric evaluation scheduled to occur today, but Korb is denying me the evaluation. I need to attend the evaluation with Dr. Bloom, because these self-inflicted injuries were caused by the lack of psychiatric care due to my mental health problems being untreated, which is why I need these x-rays today."

107. Defendant Peacock said: "I don't care. cuff up."

108. While he was walking to and from the medical x-ray appointment with defendants Peacock and Eisenberg, the plaintiff was begging and pleading with defendants Peacock and Eisenberg to allow him to attend his psychiatric evaluation with defendant Dr. Bloom; they disregarded his pleas and denied him the psychiatric evaluation after they watched him being x-rayed by the x-ray technician for these self-inflicted injuries.

109. Defendant Eisenberg said, "Use your sheets to kill yourself. You can't snitch on PSS Keith if your dead," and then locked the plaintiff in his cell.

110. Because defendants Peacock, Eisenberg, and Korb denied the plaintiff the psychiatric evaluation, the plaintiff suffered serious psychological trauma; physical deterioration; aggravated depression, PTSD, anxiety, paranoia, and psychotic episodes that caused additional self-inflicted injuries to his head, wrists, knees, and feet from punching, kicking, and banging his body off the walls when he slept and had episodes; and contributed to the damages described throughout this complaint with respect to delayed psychiatric care by defendants Dr. Bloom, Ligus, and Keith.

111. About five minutes later, defendant Timothy Little came to the plaintiff's cell door and said: "Superintendant Smith, Deputy Lucie, Dr. Bresnahan, and Unit Manager DeFelice revoked your z-code by vote sheet because of the grievance that you filed against us. I told Superintendant Smith that your a psychopath but he was upset about the grievance you filed against us and PSS Keith. His vote is the only vote that really counts."

112. Pursuant to the vote sheet, defendant Timothy Little had went against his own original recommendation for a z-code and had voted in favor of the revocation of the plaintiff's z-code before a psychiatric evaluation of any kind was completed by a psychiatrist in accordance with the z-code policy.

113. About five minutes later, defendant Dr. Bloom came to the plaintiff's cell door and said, "The guards said that you refused your evaluation, but I'll follow up with you next week because I don't have you clinical charts with me."

116. When the plaintiff said that defendant Keith had retaliated against him when she pushed back his psychiatric evaluation, defendant Dr. Bloom darted away from his cell door, stopped at the exit door of the RHU, and glared up at the plaintiff's top tier cell with a revengeful, depraved expression on his face, making the plaintiff feel uneasy.

117. Instead of following up, defendant Dr. Bloom pushed back the plaintiff's psychiatric evaluation in retaliation for his filing of grievance 973392 and failed to follow up at all.

118. On April 7, 2022, the plaintiff attended a Program Review Committee ("PRC") meeting with, among other staff, defendant Ivcic and high level security officers whom he explicitly told that he cannot and would not accept a cell mate under any circumstances because of his incompetence to live with another person and that his violent history and propensity for violence demonstrated the fact that a violent confrontation would occur amongst him and any prospective cell mate if they would put him in a cell with another person.

119. About an hour later, defendants Smith, Ivcic, Bresnahan, Timothy Little, and Defebce orchestrated a violent confrontation amongst prisoners like the plaintiff, who have a propensity for violence and were suffering untreated mental health problems, when they forced him to accept a cell mate in general population, in order to goad, exploit, and taunt his mental health problems.

120. Without unpacking his property, the plaintiff assaulted another cell mate in general population until O.C. spray was administered by the guards, causing his eyes, throat, and skin to burn for weeks; respiratory difficulties; chest pain; and inability to breath.

121. On April 19, 2022, defendant Sechrengost denied grievance 973392 and all requested relief on these grounds: "Kauffman does not present symptoms consistent with mental health problems and does not qualify for pharmacotherapy, psychotherapy, or mental health programming."

122. On April 20, 2022, the plaintiff spoke to defendant Keith and PSS Olbert cell side about his mental health concerns and requested psychiatric care, but defendant Keith told him to write her supervisors - defendants Smith, Ivcic, Bresnahan, and Sechrengost - who by this time had ordered cessation of all referrals to a psychiatric provider and were ordering defendant Dr. Bloom to deny him psychiatric care.

123. On April 21, 2022, albeit they continued to fabricate his medical records, the plaintiff spoke to defendant

Page 17 of 69

Keith and PSS olbert cellside about his mental health concerns and defendant keith said, "Get ready, I've had enough of your shit," and left.

124. About a minute later, defendant Rousell came to the plaintiff's cell, accompanied by CO Williams, who directed him to come to his cell door to be restrained.

125. The plaintiff then went to his cell door as ordered, where he was restrained by defendant Rousell and CO Williams and taken to the strip search cage by the directives of defendant Keith.

126. Defendant Dr. Bloom met the plaintiff at the strip search cage, where he treated the plaintiff not as a patient, but as a nuisance, and conducted a grossly incompetent, degrading, and recklessly inadequate "examination" of the plaintiff.

127. Defendant Dr. Bloom told the plaintiff that his filing of "bogus grievances" against the psychologists and psychiatrists would not invoke him to prescribe medication of any kind.

128. During the evaluation the plaintiff complained to defendant Dr. Bloom about the discontinuance of his prescribed Remeron; the denial of follow up care; and the thoughts of hopelessness, anxiety, paranoia, PTSD, and psychotic episodes he suffered due to the lack of psychiatric care; and pointed out that his family practitioner prescribed him powerful psychiatric medication but that he would accept any medication offers.

129. Defendant Dr. Bloom said: "Dr. Ligas discontinued your medication because prisoners are not supposed to ask for things like that. Your family practitioner is probably high on drugs. I am not prescribing you any medication, nor am I following up with you again because I'm terminating all future evaluations."

130. Defendant Dr. Bloom then left the room in a rage and went to his office, where he fabricated the plaintiff's medical records, accusing the plaintiff of "arguing with medication offers" and "refusing a medication offer"; that is, a medication offer that defendant Dr. Bloom did not offer to the plaintiff.

131. Defendant Dr. Bloom then directed defendants Mooney, Rousell, Jones, and McPowell, and CO Williams to put the plaintiff in the punishment cell, to take all his clothes, and all his property including grievances and legal work, and to impose "legal mail restrictions" against him by means of defendants George Little and Harry's 709 restriction policy, which prevented delivery of the plaintiff's incoming legal mail sent from the Court and prevented delivery of all incoming and outgoing mail.

131. Defendant Rousell and CO William came to the strip search cage and directed the plaintiff to turn

over his clothes because they said they were taking all his property and placing him in the "rat pen"(a.k.a the "grind up" or "punishment cell,")[1] until he agreed to withdrawl the grievance he filed against, among other staff, defendants Smith, Dr. Bloom, and Keith regarding retaliation and denial of mental health care.

132. About a minute later, the Hostage Negotiation Team ("HNT") came to the strip search cage, accompanied by defendants Mooney, Jones, and McDowell, who were wearing riot helmets, gas masks, and jackets, and carrying tazors and tear gas dispensers.

133. The plaintiff told defendant Mooney: "Listen, I didn't do anything wrong. Alls I did was ask Dr. Bloom and PSS Keith for mental health care. Dr. Bloom and PSS Keith are trying to shut me out of the Court by taking my grievances and legal work. They're being unreasonable by imposing these restrictions, but I will not withdrawl the grievance I filed against them because I have decided to file a lawsuit against them."

134. Defendant Mooney said: "Your unreasonable when you file grievances and lawsuits! Having PSS Keith supervised by PSS Olbert costs a lot of money and neither Superintendant Smith nor I will allow you to destroy the reputation of SCI-Houtzdale in your fucking lawsuit! You are will suffer the worst pain you've ever suffered in your life when we put you in the [punishment cell]."

135. The plaintiff then suffered a psychotic break down and began to bang his head on the walls of the strip search cage, resulting in severe swelling and bruising to his face and head, severe migraine headaches, dizziness, blurred vision, severe pain, and a concussion.

136. When the plaintiff had fallen unconscious and then woke up on the floor, defendant Rousell stood over his body and said, "Make it bleed pussy," and and defendant Buskirk walked past the room and said, "We're going to rape you in the [punishment cell]."

[1] The pro se plaintiff understands from the Court's vantage point that using the term "rat pen" to describe a policy used by the defendants to obstruct prisoners' access to the Court by mail when prisoners like the plaintiff try to file a lawsuit against prison officials is obscene and highly offensive to the Judicial System and the Honorable United States Judges therein. Unfortunately, a lot of the defendants do make references to "the rat pen" verbatim when describing their motive behind enforcing this policy. Due to the repugnant nature of the term "rat pen," the pro se plaintiff refers to said policy as the "punishment cell" or "709 restrictions" or "paper restriction" herein.

137. The plaintiff asked defendant Rousell and CO Williams for medical treatment but they refused; instead, they called over a member of the HNT, who enticed the plaintiff to go to the punishment cell under an agreement that he received a mattress in his cell.

138. After the plaintiff was taken to the punishment cell by the HNT, defendant Mooney came to the plaintiff's cell door and said, "Fuck you, your mattress, and your lawsuit," and left.

139. By virtue of the 709 restriction policy, defendant Mooney confined the plaintiff in a cold, constantly illuminated, vermin and fly infested punishment cell which was covered in feces, urine, vomit, and O.C. spray; was not provided bedding of any kind, no mattress, no hygiene products, no writing utensils, no clothes, no sheets or blankets, no sick call request, no grievances, no paper, no toilet paper, no medical care, and no cleaning supplies; was denied out of cell exercise and showers; and was deprived of all his property including clothes, legal work, and envelopes.

140. The utterly squalid and barbaric prison conditions of the punishment cell caused the plaintiff to suffer insomnia, PTSD, burning to his eyes and skin, loss of appetite, substantial weight loss, inability to sleep for five consecutive days from bugs crawling over him and the illumination from the lights, an infection from a rash under his left armpit from the unsanitary filthy conditions, migraine headaches, coughing up mucus, bug bites which got infected, swelling and soreness to his feet because the cell was flooded with human waste, respiratory difficulties, and proximately lead to him being drenched in his own as well as other prisoners' feces and human waste because he had nothing to clean himself with.

141. On April 24, 2022, defendant Dyche came to the plaintiff's cell door, accompanied by defendant Young, who directed the plaintiff to come to the cell door to be restrained because they said they were giving him a mattress under an agreement he withdrew grievance 973392.

142. The plaintiff told defendants Dyche and Young that he would not withdraw the grievance and then requested access to his legal work.

143. Defendant Dyche said they would come back soon to "beat the life out of him".

144. Defendants Dyche and Young then turned off the plaintiff's cell water from outside his cell, and left.

145. Shortly after these events, defendant Young returned to the plaintiff's cell, accompanied by defendant Dyche, who directed him to come to the cell door to be restrained under the pretext that they were giving him a mattress.

140. The plaintiff then went to the cell door as ordered, where he was restrained behind his back with handcuffs by defendants Dyche and Young and then taken to the back of his cell.

147. In the back of the cell, defendant Dyche screamed in the plaintiff's face, "Withdrawl the fucking grievance or I'll beat the shit out of you," and defendant Young Dyche blocked the cell door.

148. The plaintiff said: "I will not withdrawl the grievance. You cannot lock me up in a filthy cell without clothes, medical treatment, or water. I'm covered in feces. Please return my legal work so I can file a lawsuit."

149. Defendant Dyche - motivated by his own abusive, sexual desires - then reached his hand under the plaintiff's smock and painfully grabbed, squeezed, and twisted his testicles and penis with full force for about twenty seconds which caused chronic pain to his testicles and penis persisting for two days; physical weakness, nausea, chest pain, heart palpitations, fleeting dizziness, permanent erectile dysfunction, and severe migraine headaches that resulted in a disabling effect and vomiting and was so bad that he could not move, eat, or sleep which caused additional weight loss.

142. While the plaintiff was screaming for help, defendant Dyche said, "Shut the fuck up or I will rape you!"

143. Defendant Dyche forcefully punched the plaintiff's left eye with a closed fist.

144. Defendant Young entered his cell and punched and kicked the plaintiff.

145. Defendants Dyche and Young continued to punch and kick the plaintiff in his ribs, head, torso, and legs after he fell down and broke his right knee.

146. Defendants Dyche and Young pulled the plaintiff in opposing directions by his handcuffs, drug him to the cell door by his handcuffs, closed his cell door, and forcefully and belligerently pulled his handcuffs out his cell's wicket for about twenty seconds, causing his wrists to break, open cuts and sores to his wrists which got infected from the filthy cell conditions, permanent numbness in his wrists persisting every day to date, a dislocated right shoulder, diminished mobility to both his wrists and right shoulder, and pain.

147. While they pulled and ripped the plaintiff's handcuffs through his cell's wicket, defendant Dyche sprayed an entire can of O.C. spray into his cell and said, "Eat this fucking O.C. spray, rat!"

148. The plaintiff suffered the harmful effects of O.C. spray including burning on his eyes and skin; chemical burns to the skin on his testicles, legs, chest, and arms; open blisters and peeling skin on his arms, legs and testicles which caused a lingering skin irritation that persisted for three weeks; respiratory difficulties,

and the blisters on his testicles were so bad that the plaintiff was unable to move, eat, or sleep or use the toilet.

148. Defendants Dyche and Young re-opened the plaintiff's cell door, and defendant Young came about two inches from his face and asked him: "Change your mind about contacting the Court?"

150. The plaintiff told defendant Young that he would contact the Court.

151. Defendants Dyche and Young then ordered defendants Korb, Buskirk, and Rousell to take the plaintiff to the back of his cell and beat him again

152. The plaintiff was taken to the back of his cell again, where he was beaten with closed fists and kicks by Korb, Buskirk, and Rousell, who also spit on him and called him a "rat, snitch, faggot."

153. During these events defendant Gondek remained outside the plaintiff's cell and did not intervene.

154. During these events the plaintiff did not resist or threaten the officers in any fashion or break any prison rules.

155. As a result of the abuse by defendants Dyche, Young, Korb, Buskirk, and Rousell, the plaintiff suffers a broken right knee causing diminished mobility, a permanent, painful clicking/grinding in his right knee; two broken wrists, and open cuts, bruises, and abrasions to his wrists resulting in permanent numbness, loss of feeling, and diminished mobility; a lump on his head the size of a gulf ball and an abrasion and swelling on his head; brain damage causing cognitive dysfunction; cracked, bruised, and sore ribs; soreness in his face; migraine headaches causing vomiting, inability to sleep, and inability to eat; and unwarranted pain.

156. In addition to the physical injuries he suffered, the plaintiff also suffers increased anxiety, paranoia, PTSD, and night terrors causing profuse sweating; panic attacks; flashbacks; loss of concentration; severe dehydration from denial of water which caused dizziness, fatigue, fainting, and nausea; thoughts of hopelessless and helplessness; and mortification provoked by the wanton, callous disregard of human life by defendants Dyche, Young, Buskirk, Korb, Rousell, and Gondek.

157. Shortly after this abuse, a registered nurse - defendant Jane Doe #1 - entered the plaintiff's cell.

158. The plaintiff told defendant Jane Doe #1: "These guards beat me and sprayed me with O.C. spray in this cell. I suffered injuries to my head, right knee, face, and wrists. I need decontaminated of O.C. spray."

159. After the plaintiff reported the abuse, the performance of defendant Jane Doe #1 diminished abruptly and resulted in her failure to provide him needed medical care for cracked ribs, broken right knee, brain

damage, broken wrists, and decontamination of O.C spray.

160. Defendant Jane Doe #1 stepped outside the plaintiff's cell and said, "Come to the cell door."

161. When the plaintiff went to his cell door as ordered, defendant Jane Doe #1 hastily left and did not say anything to him; she left the plaintiff in the appall appalling conditions of the punishment cell with no medical care or access to sick call requests or paper of any kind.

162. Defendant Jane Doe #1 purposefully failed to provide any medical care of any kind, including needed pain and migraine medication, antibiotic medication, diagnostic testing, hospitalization, or decontamination, which unduly exacerbated the plaintiff's injuries described in paragraphs 149, 146, 149, 155, and 156 of this complaint, and daily agonizing pain in his weight right knee and wrists.

163. On this same day, at approximately two o'clock p.m., the plaintiff reported the abuse by defendants Dyche, Young, Korb, Buskirk, and Rousell to defendant Mattews, who then threatened to prolong the 709 restrictions lest the plaintiff would have access to the United States Postal Service and contact the Pennsylvania State Police to press and the Court to press criminal charges against defendants Smith, Mooney, Dr. Bloom, Keith, Dyche, Young, Korb, Rousell, and Buskirk for their orchestration of this wide-spread, systematic collusion to torture the plaintiff in the shockingly inhumane conditions of the punishment cell.[2]

164. On April 25, 2022, a day after the abuse, defendant Tate came to the plaintiff's cell door carrying his incoming legal mail — (1) his incoming legal mail sent from the United States District Court for the Western Middle District of Pennsylvania that contained Fed. R. Civ. P and a Prisoners Civil Rights Package (1983), and (2) his incoming legal mail sent from the United States District Court for the Eastern District of Pennsylvania that contained Local Rules of Court and a Prisoners Civil Rights Package (1983).

165. Without saying anything to the plaintiff, defendant Tate asked defendant Mattews by a radio attached to the left side of his body: "Should I do it?"

166. By virtue of the "709 restriction" policy promulgated by defendants George Little, Harry, Smith, Moore, Varner, Mooney, Mattews, Buterbaugh, Dyche, and McCoy, defendant Tate Mattews replied to defendant Tate by radio saying: "Don't give the rat nothing. He's on paper restriction."

---

[2] Eventually, the PSP was notified about these events, and they criminally charged the defendants under 2022-P-649.

167. Defendant Tote informed the plaintiff: "Your on 709 restrictions so your banned from receiving legal mail."

168. Exhibiting visible physical injuries and marinating in human waste, the plaintiff said this to defendant Tote: "Leave my legal mails on my cell's wicket until I speak to Superintendant Smith about all this."

169. Defendant Tote said: "Right, so you can sue him, too," and left carrying both legal mails.

170. After both legal mails were taken off the pod by defendant Tote, defendants Tote, Mattews, Mooney, and Gailey maliciously opened, read, and destroyed the plaintiff's legal mails outside his presence in retaliation for his contacting of the Court by mail, and to maliciously prevent the filing of this lawsuit against the litany of defendants named herein.

171. On this same day, defendants Tote, Mattews, Mooney, and Gailey maliciously fabricated the plaintiff's Digital Master Log,[3] reporting that his legal mail sent from the USDC for the Middle District of Pennsylvania was "Delivered by Security on April 25, 2022," in order to conceal this interference with delivery of his legal mail.

172. On April 26, 2022, defendants Morris and Kawalyk came to the plaintiff's cell door carrying his incoming legal mail: the same legal mail sent from the USDC for the Middle District of PA and the same legal mail sent from the USDC for the Eastern District of PA, both by which were previously opened, read, destroyed, and tampered with outside his presence by defendants Tote, Mooney, Mattews, and Gailey on April 25, 2022.

173. Before coming to his cell door, one of the defendants wrapped the plaintiff's legal mails in clear tape, individually, trying to conceal their unlawful opening, reading, destroying, and tampering of both legal mails by defendants Tote, Mattews, Mooney, and Gailey on April 25, 2022.

174. Inhibiting the plaintiff from inspecting his legal mail, defendant Morris re-opened both legal mails from outside his cell door.

175. The plaintiff seen both legal mails were opened, read, destroyed, and tampered with outside his presence on April 25, 2022 by defendants Tote, Mattews, Mooney and Gailey so he requested defendants Kawalyk and Morris call a lieutenant or a supervisor vested with authority to remove the arbitrary 709 restriction which inhibit communication with the Court by mail.

176. Defendant Morris then left the pod, while defendant Kawalyk remained outside the plaintiff's cell carrying both his re-opened, read, destroyed, and tampered with legal mails.

177. About a minute later, defendant Morris returned to the plaintiff's cell door, accompanied by defendant Buterbaugh, who told the plaintiff, "Your on paper restriction which prevented delivery of your legal mail yesterday

[3] Policy PC-ADM 803 Section 1.2.i refers to the "legal mail tracker system" as the "Digital Master Log" so plaintiff refers to it as such herein.

Your on these 709 restrictions which prevent delivery of legal mail until you stop snitching on staff."

178. The plaintiff told defendants Buterbaugh, Morris, and Kawalyk: "I'm not on a documented paper restriction or any restrictions, because I didn't do anything wrong to be placed on such restrictions. Even if I am on a paper restriction, it shouldn't prevent delivery of legal mail," and went on saying, "both legal mails were opened, read, and destroyed yesterday after Tute took them off o the pod, and their incorrectly dated."

179. While they waived the plaintiff's legal mails in his face from outside his locked cell, defendants Buterbaugh, Morris, and Kawalyk repeatedly asked the plaintiff, "If I give your legal mail to you will you expose any of this to the Court?"

180. The plaintiff repeatedly shook his head yes and repeatedly said, "Yes. Absolutely. I am exposing all this to the Court. Now give me my legal mails."

181. The plaintiff asked defendants Buterbaugh, Morris, and Kawalyk, "Does your behavior have anything to do with the abuse I reported to LT Mattews, Mooney, or McCoy, or the fact I'm drenched in feces and tortured in a cell with nothing but a smock, no water, or medical care?"

182. Defendant Kawalyk screamed in a rabid rage: "I will poison your fucking food if you expose this to the Court!"

183. Defendants Buterbaugh, Kawalyk, and Morris then stormed off out of the RHU pod in an intractable rage carrying both legal mails which were re-opened, read, destroyed, and tampered with outside his presence on April 25, 2022 by defendants Tute, Mooney, Mattews, and Gailey.

184. Defendants Buterbaugh, Morris, and Kawalyk took both legal mails to defendant Mooney's office, where defendants Mooney, Kawalyk, Morris, and Buterbaugh tore the Prisoners Civil Rights Package (1983) to shreds and stole the Fed.R.Civ.P out of the legal mail sent from the USDC for the Middle District of PA; and tore the Prisoners Civil Rights Package (1983) to shreds and stole the Local Rules of Court out of the legal mail sent from the USDC for the Eastern District of PA.

185. About five minutes after these events, defendant Morris returned to the plaintiff's cell door sneakily carrying both destroyed legal mails under his armpit, put both destroyed legal mails into the cell's wicket, then ran out of the RHU pod.

186. A few minutes later, defendant Mooney came to the plaintiff's cell door and spit on the glass of the punishment cell when the plaintiff began to ask questions about the 709 restriction policy and inhumane

prison conditions of the punishment cell.

187. About ten minutes later, defendant Mooney returned to the plaintiff's cell door, accompanied by defendants Buterbaugh, Morris, and Kawalyk, who returned the plaintiff's property and then deferred their use of the 709 restrictions against him.

188. Defendants Mooney, Butterbaugh, Kawalyk, Morris, and Bailey then conspired to fabricate the plaintiff's Digital Master Log to conceal these interferences with delivery of his legal mail, reporting his legal mail sent from the USPS for the Eastern District of PA was "Delivered by Security on April 26, 2022."

189. On April 28, 2022, after submitting a sick call request, the plaintiff was examined by defendant John Doe #1, who painfully twisted his broken right knee, put unwarranted pressure on his cracked ribs until he screamed in pain, and did not examine his broken wrists because the plaintiff reported the abuse by defendants Dyche, Young, Korb, Bushirk, and Bousell.

190. Present during this examination and encroaching on the dialog, defendant Peacock laughed while defendant John Doe #1 inflicted undue pain, as did defendant Pierce, who was recording the entire examination on a hand held camera.

191. Defendant John Doe #1 failed to provide the plaintiff medical care of any kind, including needed pain medication, migraine and anti-biotic medication, bandages, diagnostic testing, and hospitalization for his cracked ribs, broken right knee, broken wrists, brain damage, migraines, pain, and open cuts on his wrists, which exacerbated and contributed to the injuries described in paragraphs 149, 170, 148, 155, 156, and 162 of this complaint.

192. Defendant John Doe #1 then fabricated medical records, reporting that the plaintiff was "non-compliant" and "in no distress," (but the plaintiff could barely move his right knee and was clearly in distress) in order to conceal the abuse by defendants Dyche, Young, Bushirk, Korb, and Bousell.

193. On May 10, 2022, the plaintiff filed grievance 979886 against defendants Dr. Bloom, Keith, Mooney, Mattews, Butterbaugh, Tote, Dyche, Morris, and Kawalyk, grieving their conspiracy to maliciously interfere with delivery of his legal mail on April 25, 2022, and April 26, 2022, by means of the 709 restriction policy.

194. On May 12, 2022, after requesting medical care through a grievance filed against defendants Dyche, Young, Korb, Bushirk, Bousell, and Gondek, with respect to the allegation of abuse, the plaintiff was examined by defendant Lowery, who denied medical care and then fabricated medical records, reporting that the plaintiff was "in no

distress, ambulatory with a steady gait, and non-compliant "when he struggled to walk on his own to the examination and was clearly in distress and not ambulatory with a steady gait or non-compliant.

195. Defendant Lowery fabricated medical records and denied the plaintiff medical care in retaliation for reporting the abuse by defendants Dyche, Young, Korb, Bushirk, and Rousell during the begining of this evaluation, and to conceal and foster this abuse, exacerbating and contributing to the injuries described in paragraphs 149, 146, 148, 155, 156, and 162 of this complaint.

196. Intentionally inhibiting the plaintiff from obtaining medical care from defendant Lowery, defendant Buterbaugh stood between the plaintiff and defendant Lowery and repeatedly asked defendant Lowery, "Are you done with him?" while the plaintiff requested medical care from defendant Lowery.

197. Defendants Mooney and Buterbaugh ordered defendant Pierce and a CO whom the plaintiff cannot identify to record his medical examinations with defendants Lowery and John Doe #1 on a handheld camera, while defendants Buterbaugh, Peacock, and three other COs. were in the room, exposing the plaintiff to ridicule, discrimination, and additional retaliatory abuse by the RHU guards, and creating anxiety, paranoia, and fear of reprisals.

198. On May 19 2022, the plaintiff mailed a letter addressed to defendant George Little, complaining that defendants Smith, Ivicic, Bresnahan, Timothy Little, and Defelice revoked his z-code which caused a substantial risk to his physical and mental well-being; about the ongoing denial of mental health care by defendants Ligro, Dr. Bloom, and Keith; about the ongoing failure of defendants Smith, Sechrongost, Ivicic, and Bresnahan to remedy these First and Eighth Amendment violations; and about the retaliatory abuse by defendants Dyche, Young, Korb, Bushirk, and Rousell; about the ongoing, frequent interferes with delivery of his legal mail by defendants Tote, Buterbaugh, Mooney, Mattews, Morris, Gailey, and Kanayh; and about the ongoing denial of medical care by defendants Jane Doe #1, John Doe #1, and Lowery,

199. On May 21, 2022, the plaintiff sent a request slip to defendant Gailey, complaining about the ongoing opening, reading, and destruction of his incoming legal mail outside his presence.

200. Defendant Gailey replied to the request slip, saying his "legal mail is being processed in accordance with policy."

201. In May, 2022, after the plaintiff languished in the punishment cell for about a month, defendants Mooney and Mattews moved him to the corner cell of the RHU, directly accross from another punishment cell.

202. After moving the plaintiff, defendants Mooney and Mattews immediately moved inmate Ronald Banks, who was similiarly situated to the plaintiff, into the punishment cell directly accross from the plaintiff's new cell,

and then imposed the same 709 paper restriction ~~against~~ against inmate Ronald ~~Banks~~ Banks.

203. On May 23, 2022, knowing Ronald Banks was on the 709 paper restriction, defendants Mooney, Mattews, Buterbaugh, Tote, Matt Kawalyk and Morris gave Ronald Banks incoming legal mail.

204. On May 26, 2022, defendant Tote went to Ronald Bank's cell door carrying Bank's incoming legal mail.

205. When Ronald Bank told defendant Tote he was on paper restriction, defendant Tote glanced at the plaintiff's cell where the plaintiff was watching him from, and defendant Tote said, "If your not a young punk by the name of Kauffman I'll give your legal mail to you."

206. Defendant Tote then gave Ronald Banks the incoming legal mail, when ~~while~~ Banks was on 709 paper restriction.

207. Ronald Bank was similiarly situated to the plaintiff: Banks was confined in the RHU with the plaintiff for about eight months; Banks, like the plaintiff, suffers mental health problems which defendants Dr. Bloom and Keith were refusing to ~~treat~~ medically treat; Banks was confined in the punishment cell and likewise subjected to the same 709 paper restriction as the plaintiff was subjected to on April 25, 2022, and April 26, 2022, due to the 709 paper restriction policy.

208. By giving an inmate like Ronald Banks (who is in excess of thirty years older than the plaintiff) incoming legal mail while on paper restriction, but denying the plaintiff (who ~~was~~ was twenty-five years old) incoming legal mail as a result of defendants George Little, Harry, Smith, Mooney, Mattews, ~~and~~ Dr. Bloom, Buterbaugh, and Dyches' paper restriction policy of intentionally preventing delivery of legal mail to young inmates who trying to file a lawsuit like the plaintiff, defendants Smith, Dr. Bloom, keith, Mooney, Mattews, Buterbaugh, Tote, Kawalyk, and Morris A intentionally discriminated against the plaintiff because of his young age.

209. On May 27, 2022, defendant Tote came to the plaintiff's cell door carrying his legal mail sent from the USDC for the Western District of PA containing a Prisoners Civil Rights Package (1983).

210. Defendant Tote slid a paper through the side of the plaintiff's closed cell door and directed him to sign the paper in order to receive his legal mail.

211. The plaintiff signed the paper as ordered and then slid the paper through the side of his cell door to defendant Tote.

212. Verifying the plaintiff's signature, defendant Tote grabbed the paper, opened his legal mail and read the contents of his legal mail, ~~then outside the plaintiff's cell door.~~

213. Remaining outside his cell door, defendant Tote then ripped the plaintiff's legal mail to shreds, destroying

the Prisoners Civil Rights Package (1983), while calling him a "snitch, rat, and faggot" and threatening to to abuse him again in the punishment cell in retaliation for contacting the Court by Mail.

214. Defendant Tote's destructive actions required the plaintiff to contact the Court again for a Prisoners Civil Rights Package (1983), and ~~ended~~ violated his First, Fourth, and Fourteenth Amendment rights.

215. On May 31, 2022, defendant Patrick came to the plaintiff's cell door carrying his incoming legal mail sent from the USDC for the Middle District of PA containing, among other forms, a Prisoners Civil Rights Package (1983), Local Rules of Court, and Fed. R. Civ. P.

216. Before he ~~would~~ came to the plaintiff's cell door, defendant Patrick had intentionally opened, read, destroyed, and tampered with his legal mail outside his presence and then wrapped his legal mail in clear tape to conceal the unlawful handling of his legal mail.

217. When he seen his legal mail was intentionally opened, read, destroyed, and tampered with, the plaintiff told defendant Patrick, "You cannot conceal the fact that you opened, read, destroyed, and tampered with this mail outside my presence by wrapping the legal mail in clear tape. Take pictures of this legal mail before you return it to the Court."

218. Defendant Patrick said: "If you don't sign for your legal mail, LT. Dyche will fuck you up again."

219. Notwithstanding the plaintiff's orders, defendant Patrick then tried to re-open his legal mail, but then the plaintiff shouted, "No! Stop! Return my legal mail to the Court! Make sure you document this, too."

220. Because the plaintiff told him to stop, defendant Patrick did not re-open his legal mail at this time; however, defendant Patrick said, "The Court won't care that I tampered with your legal mail and they don't care about what's going on down here."

221. Defendant Patrick then left carrying the plaintiff's legal mail.

222. Defendant Patrick took the plaintiff's legal mail to an undisclosed location, where defendants Patrick, Tote, and Gailey conspired to intentionally re-open, re-read, re-destroy, and re-tamper with his legal mail outside his presence for a second time.

223. On June 1, 2022, the plaintiff sent a request slip to defendant Gailey, pointing out that defendant Tote had destroyed his legal mail on May 27, 2022, and that defendant Patrick intentionally opened, read, destroyed, and tampered with his legal mail outside his presence on May 31, 2022.

224. Defendant Gailey replied to the request slip saying, "In the mail room, legal mail is processed as per policy, as all mail."

225. On June 2,2022, the plaintiff received correspondence by mail in receipt of his letter addressed to defendant George Little, saying the plaintiff's complaint was forwarded to security at SCI-Houtzdale: the same security officers who were interfering with delivery of his legal mail.

226. On June 7,2022, the Plaintiff filed grievance 983556, grieving, among other things, retaliation by defendant Keith, PSS Olbert, Dr. Bloom, and Ligas; the denial of psychiatric care by defendants Dr. Bloom and Ligas; the discontinuance of his prescribed psychiatric medication by defendant Ligas; fabrication of his medical records by defendants Keith, PSS Olbert, Dr. Bloom; failure to train the mental health staff by defendants Smith, Sechrengost, Ivicic, and Bresnahan; and the revocation of z-code by defendants Smith, Ivicic, Bresnahan, Timothy Little, and Defelice.

227. On June 8,2022, defendant McCoy denied grievance 979886 and all requested relief on these grounds: "[Kauffman]was on a paper restriction due to previous actions which prevented delivery of [his] legal mail."

228. On June 9,2022, the plaintiff sent a request slip to defendants Gailey, and McDowell asking for proof that his legal mail sent from the USDC for the Middle District of PA, which was intentionally opened, extensive read, destroyed, and tampered with twice outside of his presence by defendants Patrick, Tote, and Gailey on May 31, 2022 - was in fact returned to the Court.

229. On June 10,2022, defendant Tote came to the plaintiff's cell door carrying his legal mail sent from the USDC for the Middle District of PA: the same legal mail which was intentionally opened, read, destroyed, and tampered with outside his presence by defendant Patrick on May 31,2022, and then again by defendants Patrick, Tote, and Gailey after defendant Patrick had taken his legal mail to an undisclosed location on the May, 31, 2022.

230. Before he came to the plaintiff's cell door, defendant Tote conspired with defendants Patrick and Gailey to intentionally re-open, re-read, re-destroy, and re-tamper with his legal mail outside his presence, then one of the defendants re-wrapped his legal mail in clear tape to conceal their unlawful handling of his legal mail.

231. Seeing his legal mail was intentionally re-opened, re-destroyed, re-read, and re-tampered with outside his presence again, the plaintiff told defendant Tote, "Why wasn't this mail returned to the Court? You opened, read, destroyed, and tampered with this legal mail outside my presence again. Now document this, take pictures pictures of this legal mail, and return it to the Court."

232. Defendant Tote malevolently smirked at the plaintiff and then left carrying his legal mail.

233. Defendant Tote took the plaintiff's legal mail to an undisclosed location, where defendants Tote, Patrick, and Gailey conspired to intentionally re-open, re-read, re-destroy, and re-tamper with his legal mail outside his presence again, totaling three intentional interferences with delivery of this legal mail.

234. Defendants Tote, Gailey, and Patrick then conspired to fabricate the plaintiff's Digital Master Log by reporting his legal mail sent from the USDC for the Middle District of PA as "Rejected by Mailroom on June, 13, 2022," in order to conceal the malicious handling of his legal mail.

235. On information and belief, defendants Tote, Patrick, and Gailey did not return his legal mail to the Court; they obstructed it.

236. On June 14, 2022, the plaintiff attended a psychiatric evaluation with defendant Dr. Bloom, where he complained of PTSD, anxiety, night terrors, paranoia, psychotic episodes, and depression; and pointed out that two months before his arrest he was hospitalized at York County Hospital, where medical staff employed Thorzine during a psychotic episode, strapped him down to a gurney and then transferred him by ambulance to Bellemonte Behavioral Hospital in Philadelphia, PA for psychiatric reasons.

237. During this evaluation the plaintiff requested psychiatric medication but defendant Dr. Bloom said, "No, I'm not prescribing medication. It's not indicated in your case. I told you this the last time I seen you."

238. The plaintiff inquired as to defendant Dr. Bloom's fabrication of his medical records on April 21, 2022, and asked him, "What medication did you say I refused in medical records on April 21, 2022?"

239. Defendant Dr. Bloom attempted to sidestep his question, but when the plaintiff urged for an answer from him, defendant Dr. Bloom said, "Medication is not indicated in your case! I said I'm not prescribing medication and what is in your medical records is none of your business!"

240. When the plaintiff asked defendant Dr. Bloom what he recommended, defendant Dr. Bloom said, "Change your fucking behavior!"

241. On June 16, 2022, the plaintiff filed grievance 985226, grieving interferences with delivery of his legal mail by defendants Tote, Gailey, and Patrick; and the failure of defendants George Little, Gailey, Wicic, McDowell, McCoy, and Mooney to take remedial actions to prevent the known, ongoing interferences with delivery of his legal mail by defendants Mooney, Mathews, Buterbaugh, Tote, Gailey, Morris, Patrick, and Kawalyk.

242. On July 12, 2022, defendant English denied grievance 985226 and all requested relief on these grounds:

"Your legal Mail was not opened or tampered with by any staff... Your refusal to sign for the mail was noted on the legal Mail tracker on 5/31/22 and 6/10/22... Staff violated no policy or procedure."

243. On July 15, 2022, defendant Klinefelter denied grievance 983556 and all requested relief on these grounds: "Your disdain with the psychiatrist not providing medication is two irrelevant."

244. The plaintiff filed an administrative appeal for grievance 973392 with defendants Varner and Moore, pointing out that the failure of defendants Sechrengost, Smith, Ivicic, and Bresnahan to take disciplinary actions against defendants Dr. Bloom, Ligas, Keith, and PSS aibert to ensure that the plaintiff received psychiatric care was violating his Eighth Amendment right; as well as and that the revocation of his z-code by defendants Smith, Ivicic, Bresnahan, Timothy Little, and DeFelice. was causing a substantial risk to his physical and psychological well-being.

245. On July 28, 2022, defendants Varner and Moore denied grievance 973392 and all requested relief on these grounds: "Overall, appropriate care and clinical decisions were made."

246. In August 2022, defendants Klinefelter, Ivicic, Bresnahan, Timothy Little, and DeFelice forced the plaintiff to accept a cell mate in general population, causing exacerbation of anxiety, paranoia, PTSD, and playing psychotic episodes that resulted in violent confrontations with his cell mate.

247. On this same day, the plaintiff told defendant Timothy Little, "I'm incompetent to live in a cell with another person. I'm not feigning these conditions. I've struggled with them my whole life and I need meaningful psychiatric care."

248. Defendant Timothy Little said; "A z-code is out of question and I'm not a psychiatrist."

249. On August 11, 2022, the plaintiff was given an institutional pass by a CO, who directed him to report to the visit room to pick up a Prisoners Civil Rights Package (1983) sent from the USDC for the Western District of PA.

250. When he reported to the visit room as ordered, the plaintiff was met there by defendants Kawalyk, John Doe #2, and other security officers whom he is unable to identify.

251. Before calling the plaintiff to the visit room, defendants Kawalyk, John Doe #2, Gailey, and Klinefelter conspired to steal his Prisoners Civil Rights Package (1983) out of his legal mail in retaliation for contacting the Court by Mail.

252. Without giving him an option to sign or refuse to sign for the legal mail, defendants John Doe #2 gave the plaintiff the empty envelope and said, "Get the fuck out or I'll kill you."

253. When the plaintiff threatened to file a grievance against them if they did not return his stolen Prisoners Civil Rights Package (1983), defendant Kawalyk charged towards him and said, "I'll spray your rat ass with O.C. spray if you file a grievance!"

254. Defendant John Doe #2 and other security officers also charged towards the plaintiff making threats to his life and to confine him in the RHU indefinitely in retaliation for contacting the Court by mail.

255. Dreading violent reprisals, the plaintiff left the visit room and returned to his housing unit carrying the empty envelope.

256. Defendants Kawalyk, John Doe #2, Gulley, Klinefelter, McCoy, English, and McDowell then conspired to fabricate the plaintiff's Digital Master Log twice to conceal this by reporting his legal mail sent from the USDC for the Western District of PA as "Delivered by Security on 8/18/22."

257. On August 13, 2022, the plaintiff was given an institutional pass by a CO, who directed him to report to the visit room to pick up a Prisoners Civil Rights Package (1983) sent from the USDC for the Western District of PA.

258. When he reported to the visit room as ordered, the plaintiff was met there by defendants Hardy, CO Bloom, John Doe #3, and Olsen.

259. While waiting in line, the plaintiff seen defendants Hardy, CO Bloom, John Doe #3, and Olsen give incoming legal mail to two other inmates whom were similiarly situated to the plaintiff, and they gave these similiarly situated inmates no problems of any kind.

260. The plaintiff then went to the desk where defendants Hardy, CO Bloom, John Doe #3, and Olsen were dispensing incoming legal mail, and asked them for his legal mail.

261. Defendant John Doe #3 began to taunt the plaintiff by waiving his legal mail in his face and saying, "Want your legal mail? Nope can't have it, bitch."

262. While defendant John Doe #3 was taunting him, defendant Hardy came about two inches from the plaintiff's left ear and said, "If you contact the Court one more time I will kill you and your family or put you in the RHU forever so LT Dyche can rape you everyday."

263. The plaintiff then put his institutional ID card on the desk and said, "Listen, I don't want any problems. I just want my legal mail."

264. Defendant Hardy sprayed O.C. spray on the plaintiff's face and said, "You like filing lawsuits?"

265. During these events defendants CO Bloom, and Olsen, and John Doe #3 remained in the room and did not intervene.

266. Instead of intervening, defendants CO Bloom and Olsen painfully wrenched the plaintiff's left arm over his head from behind his back, and forced him into restraints, causing a dislocated left shoulder, severe pain, diminished mobility.

267. Defendants CO Bloom and Olsen tightened the handcuffs so much, causing the plaintiff's wrists to turn numb and black and blue from the loss of blood circulation, bilateral wrist pain, bruises and cuts, permanent scarring, and broken bones.

268. The plaintiff was then taken to a different different room by defendants CO Bloom and Olsen.

269. Defendants Hardy and John Doe #3 remained in the visit room with the plaintiff's legal mail and conspired with defendants Jones and McDowell, who were called over by one of the defendants.

270. A few minutes later, defendants Jones and McDowell came to the room where the plaintiff was taken by defendants CO Bloom and Olsen, to speak with the plaintiff.

271. When the plaintiff reported the abuse, requested medical care and decontamination of O.C. spray, and requested his legal mail, defendant Jones said, "You're banned from receiving legal mail. Go back to your housing unit. If you contact the Court again we will break your jaw and then kill you."

272. Without calling a medical provider, defendants Jones and McDowell uncuffed the plaintiff and returned to the visit room, where the plaintiff's ID card and legal mail was being held by defendants Hardy and John Doe #3.

273. The plaintiff then walked towards the visit room and began to beg defendants Jones, McDowell, Hardy, John Doe #3, CO Bloom, and Olsen for his legal mail and ID card.

274. Defendant Jones charged towards the plaintiff and said, "If you don't go back to your unit I'll fuck you up! Shut the fuck up! Contact the Court again and you will be put in segregation forever!"

273. Defendant Jones gave the plaintiff his ID card, but willfully and maliciously refused to give him

his legal mail in retaliation for contacting the Court by mail.

274. The plaintiff returned to his housing unit as ordered, and as a result of this reprisal by defendants Jones, McDowell, Hardy, CO Bloom, John Doe #3, and Olsen, he suffers (in addition to the injuries described in paragraphs 266 and 267 of this complaint) increased PTSD and night terrors, prolonged burning sensation and lingering skin irritation on his face and skin that persisted for two weeks, inability to breath, intense pain, coughed up blood two or three times per week which persisted for a month, and chemical burns to the skin on his face which caused blisters and peeling skin.

275. Defendants Jones, McDowell, Hardy, CO Bloom, John Doe #3, Olsen, and Gailey then conspired to fabricate the plaintiff's Digital Master Log to conceal this by reporting his legal mail sent from the USDC for the Western District of PA as "Rejected by Mailroom," but also "Delivered on 8/15/22," but they obstructed the legal mail.

276. On August 15, 2022, the plaintiff sent request slips to defendants Klinefelter, Gailey, and McDowell, recounting the abuse and denial of his legal mail by defendants Jones, McDowell, Hardy, CO Bloom, and Olsen on 8/13/22.

277. On August 16, 2022, defendant Gailey replied to the request slip saying, "You refused to accept your legal mail."

278. The plaintiff filed an administrative appeal for grievance 979886 with defendants Varner and Moore, recounting in detail the events that transpired with respect to the imposition of the 709 restriction policy that prevented delivery of legal mail, and the fabrication of his Digital Master Log by defendants Mooney, Matthews, Butterbaugh, Tote, Kawalyk, Morris, and Gailey; and the inhumane prison conditions in the punishment cell.

279. On August 23, 2022, defendants Varner and Moore denied the plaintiff's administrative appeal for grievance 979886 and all requested relief on these grounds: "On 4/25/22, you were on a paper restriction; therefore, you would not have received mail on that day... There is no evidence that any mail was destroyed or tampered with."

280. The plaintiff filed an administrative appeal for grievance 985226 with defendant James, recounting in detail each and every interference with delivery of his legal mail and fabrication of his Digital Master Log by defendants Mooney, Matthews, Butterbaugh, Tote, Morris, Kawalyk, and Gailey; and pointing out that defendant Gailey was attempting to cover-up all these interferences by refusing to mail his final level grievance appeals to defendants Varner and Moore.

281. On August 25, 2022, defendant James denied the plaintiff's administrative appeal for grievance

985226 on these fabricated grounds: "I interviewed officer Tote... officer Tote again clarified that you wouldn't accept your legal mail, didn't review it, and never verified if it had been tampered with in anyway. Additionally, you failed to accept or review the mail by your own admission. There is no evidence to support your claim that staff are opening or tampering with your mail."

282. On September 5, 2022, the plaintiff put an administrative appeal for grievance 985226 addressed to defendants Moore and Varner into the prison mailbox, recounting in the appeal all the intentional interferences with delivery of his legal mail and fabrication of his Digital Master Log by defendants Mooney, Matthews, Buterbaugh, Kawalyk, Tote, Morris, Patrick, Jones, McDowell, CO Blaum, John Doe #2, John Doe #3, Olsen, Gailey, and Klinefelter; and complaining that defendant Gailey was attempting to cover-up all this by refusing to mail his grievance appeals to defendants Varner and Moore; and asserting that defendant James fabricated the grievance appeal response based upon the misleads of defendant Tote.

283. The administrative appeal that the plaintiff put into the prison mail box on September 5, 2022, was in a standard sized envelope and contained eight pages total: the prerequisite photocopies of grievance 985226 and a one page appeal statement written on 9¾ x 7½ inch composition notebook paper.

284. The envelope was neither overweight under policy DC-ADM 803 nor was it overweight under the United States Postal Service Policy; thus, the envelope did not require any extra postage.

285. On September 7, 2022, the plaintiff was given an institutional pass by a CO, who directed him to report to the visit room, because the CO said it was to pick up legal mail.

286. The institutional pass was created by defendant Neidwich, Gailey, and "security," who had a collusive, premeditated plan to fabricate a misconduct report against the plaintiff in order to justify putting him segregation in retaliation for his attempt to appeal grievance 985226 to defendants Varner and Moore.

287. Under the pretense he was picking up legal mail, the plaintiff reported to the visit room, where he was met by defendants Bartley, Cartwright, and other security officers whom he cannot identify.

288. One of the defendants gave the plaintiff the envelope addressed to defendants Varner and Moore that contained his administrative appeal for grievance 985226- the same envelope he had put into the prison mailbox on September 5, 2022.

289. When the plaintiff had asked them why the appeal was not mailed to defendants Varner and

Moore in accordance with the policy, one of the defendants said, "Because the mailroom Supervisors won't mail your god damn grievances to Central office. We have had enough of your grievances! If you try to appeal the grievance again we will kill you or put you in the RHU indefidently!"

290. Defendants Bartley, Cartwright, and other security officers then charged towards the plaintiff saying, "Your a rat," and, "Fucking snitch," and, "File another grievance bitch. We will make sure you don't make it out of the RHU alive. You Watch what is about to happen next."

291. Without saying anything, the plaintiff left the visit room carrying the envelope addressed to defendants Varner and Moore that contained his administrative appeal for grievance 985226.

292. While walking back to his housing unit, the plaintiff reported the abuse by defendants Bartley, Cartwright, and other security officers to a staff group of staff walking in his direction.

293. One of the staff, who was walking with defendant Keith, had directed the plaintiff to walk with him the back to the visit room, where he then called over defendant McDowell.

294. The plaintiff told defendant McDowell that defendants Neidwich and Gailey had refused to mail the grievance appeal to defendants Varner and Moore, and that defendants Bartley, Cartwright, and other security officers then threatened his life in retaliation for attempting to appeal the grievance to defendants Varner and Moore.

295. Defendant McDowell snatched the envelope from the plaintiff's hands, ripped it open, and read it out loud.

296. Seeing that the plaintiff was trying to appeal a grievance which was filed against him and a litany of other security officers, defendant McDowell said, "Put him in the hole."

297. Defendants Bartley, Cartwright, and McDowell restrained the plaintiff and tightened his handcuffs so much that the blood circulation in his wrists cut off, causing numbness in his wrists and fingers, cuts, bruises, pain, and permanent scarring.

298. While taking the plaintiff to segregation, defendants McDowell, Bartley, and Cartwright said they would "kill him in the RHU" if he "keeps snitching on security in grievances."

299. Defendants Bartley, Cartwright, and McDowell put the plaintiff in a strip search cage, where the plaintiff reported the reprisal by defendants Bartley, Cartwright, and McDowell to defendant Mooney, who then put him in the same constantly illuminated, verman and fly infested punishment cell which was covered in hot feces, vomit, blood, and O.C spray; and he deprived the plaintiff of all property; and imposed "yard and

Shower restrictions" in retaliation for his attempt to appeal the grievance to defendants Varner and Moore.

300. Defendants Bartle Bartley, Cartwright, and McDowell then filed a fabricated misconduct report against the plaintiff, accusing him of "Refusing to obey an order to leave the visit room" and "Using abusive, obscene, or inappropriate language to or about an employee."

301. On September 12, 2022, the plaintiff attended a disciplinary hearing for the misconduct via teleconference with defendant Nunez, who was being a smart aleck by repeatedly saying, "What? I can't hear you. What?" and turned up the volume on a remote control.

302. Defendant Nunez found the plaintiff guilty of all charges based on no evidence, and sentenced him to thirty days in segregation in retaliation for reporting the reprisal by defendants Bartley, Cartwright, and McDowell

303. After defendant Nunez hastely sentenced him, the plaintiff requested access to his property in order to present as evidence of retaliation the envelope that contained the grievance appeal which was give returned to him by defendants McDowell, Bartley, and Cartwright on September 7, 2022.

304. Defendant Nunez said: "No, If you would have just told me what had happened than I would have just given you cell restriction," proving that he did not have an opened mind and was biased.

305. On September 25, 2022, the plaintiff filed an administrative misconduct appeal with defendant Klinefelter, pointing out that defendants McDowell, Bartley, and Cartwright filed the fabricated misconduct report in retaliation for appealing the grievance, and that defendant Nunez violated his due process rights at the disciplinary hearing.

306. On September 28, 2022, defendant Klinefelter denied the administrative misconduct appeal and upheld the thirty-day sentence.

307. As a result of the filing of the fabricated misconduct report by defendants McDowell, Bartley, and Cartwright; the placement in the punishment cell by defendant Mooney; the denial of due process at the disciplinary hearing by defendant Nunez; and the subsequent denial of the misconduct appeal by defendant Klinefelter, the plaintiff suffered the stigma of being housed in segregation; denial of privileges, including phone calls, visits, yard, commissary, recreation, school credits, GLP and CSD pay periods, daily showers, T.V., and tablet, causing loss of family relationships from the loss of social contacts; loss of freedom, movement, and liberty; inability to collect affidavits from his cell mates in general population who would have attested to his claim of being incompetent to live in a cell with another person; loss of twenty pounds of body weight and muscle

atrophy; severe migraine headaches, insomia, and loss of sleep from the constant illumination in the cell; prolonged burning sensation to his eyes and skin, coughing up phlegm, respiratory illness from mold exposure, sharp chest pains, skin rash, loss of appetite, and vomiting from the squalid conditions of the punishment cell; degraded reputation; a chilling and deterring effect to his First Amendment right to file grievances against SCI-Houtzdale staff; cuts and bruises to his wrists from being restrained every time he left his cell; and inability to sleep from bugs walking over him.

308. On October 11, 2022, the plaintiff put a letter addressed to defendant Bennett into the prison mailbox, complaining of, among other things, numerous interferences with delivery of his legal mail by defendants Klinefelter, Gailey, Mooney, Mattews, Jones, McDowell, Tote, Hardy, Co Bloom, Olsen, Kawalyk, Morris, and Patrick; ongoing denial of psychiatric care by defendants Bloom and Ligns; ongoing denial of Z-code by defendants Klinefelter, Ivicic, Bresnahan, Timothy Little, and Defelice; and pointing out that defendants George Little, Varner, Moore, Klinefelter, and Sechrengost were willfully failing to take disciplinary actions against staff who were violating his constitutional rights at SCI-Houtzdale.

309. On this same day, the plaintiff sent a request slip to inmate accounts at SCI-Houtzdale, directing them to mail a $10.00 check payable to this address: "USDC for the Western District of PA, Clerk of Court, 700 Grant St., Pittsburgh, PA 15219," in order to buy a copy of the Local Rules of Court.

30. On this same day, defendant Gailey showed defendant Klinefelter the plaintiff's letter addressed to defendant Bennett regarding issues at SCI-Houtzdale.

311. On October 13, 2022, defendants Klinefelter, Ivicic, McDowell, George Little, Marsh and the office of Population Management ("OPM") transfered the plaintiff to SCI-Forest, where he was then taken to the RHU by LT Smith, a LT whom the plaintiff cannot identify, and other high level security officers.

312. When the plaintiff asked LT Smith and the security officers why they needed all these guards to take him to the RHU, they began to antagonize the plaintiff about the grievances he had filed at SCI-Houtzdale, and said they would "wipe their ass with his legal work."

313. Defendants Klinefelter, Ivicic, and McDowell transfered the plaintiff to SCI-Forest solely because of the letter he had mailed to defendant Bennett and the grievance he had filed against defendant Keith regarding retaliation; the costs to have defendant Keith supervised by PSS Olbert became onerous, so they transfered the plaintiff instead of

obstructed the plaintiff's legal mail that contained his requested copy of the Local Rules of Court sent from the USDC for the Western District of PA - the same copy of Local Rules of Court that inmate accounts charged the plaintiff's prison account $10.00 for on October, 13, 2022.

322. With respect to the fabricated Digital Master Log, defendants Klinefelter, Gailey, Neidwich, McDowell, Jones, James, English, McCoy, and John/Jane Doe#4 conspired to fabricate the plaintiff's Digital Master Log by reporting that his legal mail which contained the Local Rules of Court sent from the USDC for the Western District of PA was "Rejected by Mailroom" and that it was sent from the "Supreme Court."

323. When the plaintiff had filed a grievance regarding this obstruction of his legal mail, defendant Klinefelter asserted in his initial review response that his legal mail sent from the USDC for the Western District of PA "included an invalid court control number" and "was returned to the sender."

324. When the plaintiff had filed an administrative grievance appeal with defendants Varner and Moore, defendants Varner and Moore asserted in their final appeal decision that his legal mail sent from the USDC for the Western District of PA "was not addressed in accordance with DOC policy and was returned."

325. On information and belief, defendants Klinefelter, Gailey, Neidwich, McDowell, Jones, McCoy, James, English, John/Jane Doe#4, Varner, and Moore did not return the plaintiff's legal mail to the Court: They had opened, read, and tampered with it outside the plaintiff's presence and then obstructed it with malice.

326. On October 31, 2022, the plaintiff put a letter addressed to defendant George Little into the prison mailbox, complaining that his z-code was revoked at SCI-Houtzdale after his psychiatric medication was abruptly discontinued by defendant Ligas; and that defendants Irwin, Blicha, and his unit team at SCI-Forest were denying him z-code status, notwithstanding his need for z-code due to anxiety, paranoia, PTSD, and psychotic episodes resulting in violence with cell mates; and that defendant Klinefelter had transferred him to SCI-Forest in retaliation for complaining to defendant Bennett about issues at SCI-Houtzdale; and that he was being denied psychiatric care at SCI-Forest; and demanded an immediate transfer back to SCI-Houtzdale.

327. On November 4, 2022, after again telling defendants Blicha and Gustafson that he cannot live in a cell with another person, the plaintiff was released from the BHU to general population, where defendants Irwin, Blicha, Gustafson, Cummins, and Miller forced him to live in a cell with another person, causing increased anxiety, paranoia, PTSD, and psychotic episodes.

328. On November 5, 2022, the plaintiff sent request slips to defendants Cummins and Miller, pointing out that his z-code was revoked at SCI-Houtzdale after his powerful psychiatric medication was also discontinued by defendant Ligas, and that his history demonstrates, by virtue of his violent history, that he cannot live in a cell with another person due to anxiety, paranoia, PTSD, and psychotic episodes resulting in violence with cell mates.

329. On November 8, 2022, the plaintiff spoke to defendants Cummins and Miller about these foregoing concerns with respect to z-code status and lack of psychiatric care, and recounted in detail each and every violent confrontatation he had with numerous cell mates in the Pennsylvania Department of Corrections.

330. Defendant Miller said, "I'll issue a misconduct if your refusing a cell mate," and defendant Cummins said, "Would you prefer living in the RHU?"

331. When the plaintiff told PSS Trash that housing him in a cell with another person would result in another violent confrontation with any cell mate living in his cell because of his mental instability, defendants Miller and Cummins transfered his cell mate to a different cell in order to accomodate the plaintiff's need for single cell status.

332. On November 22, 2022, defendants Cummins and Miller received by mail from defendant George Irwin, Little a copy of the plaintiff's complaint addressed to defendant George Little regarding the issues he was having with his unit team at SCI-Forest – the issues described in paragraph 326 of this complaint.

333. On this same day, November 22, 2022, defendant Knapp came to the plaintiff's cell door and directed him to pack his property because he was "moving to cell one with a cell mate since you like complaining to Secretery Little."

334. The plaintiff told defendant Knapp that his z-code was recently revoked and that he cannot take a cell mate because of his mental instability which results in violence with cell mates.

335. Defendant Knapp said; "Take a cell mate or I'll issue a misconduct."

336. The plaintiff then began to pack his property as ordered.

337. Shortly after these events, defendant Wells came to the plaintiff's cell and said, "Hurry the fuck up!"

338. The plaintiff told defendant Wells that he was not accepting a cell mate because of mental instability resulting in violence with cell mate.

339. Defendant Wells said: "It's not a fucking choice!" and left.

340. Before moving to cell one, the plaintiff stopped at the counsilor's office, where defendant Cummins was watching him from, and asked defendant Cummins if there were any single cells open.

341. Defendant Cummins said: "Go into that cell right now or I'll issue a misconduct!"

342. The plaintiff then walked to cell one pushing a property cart with all his property on it.

343. When the plaintiff began to unpack his property in cell one, a strange prisoner was already in the cell: the plaintiff's prospective cell mate.

344. The plaintiff began to hallucinate in the cell, so his prospective cell mate then left the cell to speak to defendants Wells and Knapp, who were standing outside the cell watching this violent confrontation transpire.

345. The plaintiff's prospective cell mate told defendants Wells and Knapp: "This prisoner is obviously suffering psychological issues – possibly paranoia, phycosis, or hallucinations. He is in no shape to be housed in a cell with me or anyone else."

346. The plaintiff then left the cell to speak to defendants Wells and Knapp.

347. The plaintiff told defendants Wells and Knapp: "There are clemons and shadows in that cell attacking me. I need to speak to a psychologist immediately."

348. Defendant Wells told the plaintiff and his prospective cell mate: "Go back into that cell together right now or I'll issue a misconduct!"

349. The plaintiff then went into the cell as ordered, accompanied by his prospective cell mate.

350. The plaintiff then began to hear voices and seen dark figures attacking him in the cell and began punching and kicking these figures.

351. During this psychotic episode the plaintiff struck his prospective cell mate multiple times and pulled a muscle in his right shoulder, causing severe pain.

352. Defendants Wells and Knapp remained outside the cell, and with defendants Miller, Cummins, Blieha, Gustafson, Irwin, and George Little, orchestrated this violent confrontation to exploit, goad, and taunt the plaintiff's knowingly untreated mental health problems.

353. Defendant Wells then entered the cell, accompanied by defendant Knapp, and told the plaintiff: "Stop stricking your cell mate."

354. The plaintiff immediately stopped fighting these dark figures and submitted into handcuffs.

355. Defendants Wells and Knapp handcuffed the plaintiff's hands behind his back, turned him around, and began striking his head and ribs with closed fists and banging his head off the walls, causing blurred vision, lumps on his head, bruised ribs, severe migraine headaches, dizziness, and severe pain.

356. After beating him, defendants Knapp and Wells took the plaintiff to the hallway of F unit, where the plaintiff reported this abuse by defendants Knapp and Wells to defendants Miller, Best, John Doe #5, John Doe #6, and John Doe #7.

357. When he reported this abuse, defendants Best, John Doe #5, and John Doe #6 pushed the plaintiff to the ground, causing a broken right knee/exacerbating his already broken knee; punched and kicked his face, head, and ribs, causing bruising, abraisions, and pain; pressed their knees and elbows on his neck using full force, causing dizziness, inability to breathe, and nearly killed the plaintiff; and ripped his handcuffs in opposing directions, causing his wrists to break, turn numb, bleed, bruise, and permanent scarring.

358. During this retaliatory beating the plaintiff was telling defendants Best, John Doe #5, and John Doe #6: "Get off of me! I'm not resisting! I can't breathe!"

359. Defendant Best said: "I didn't say you were resisting. You like accusing these officers of beating you so I'm showing you a real beating."

360. During these events the plaintiff did not resist or threaten the officers in any fashion or break any prison rules.

361. During these events defendants Miller and John Doe #7 remained in the hallway of F unit and did not intervene.

362. Defendant Miller said: "Why don't you write Secretary Little again."

363. After the above described assualt, the plaintiff was taken to the medical department, where he was met by defendant Antonuccio.

364. After the plaintiff had limped into the medical department, defendant Antonuccio looked at his right knee and said, "Severe bruising and redness."

365. The plaintiff complained that he was unable to bend his right knee because it felt broken, that his wrists were injured, and that he was suffering a headache.

366. Defendant Antonuccio had directed the plaintiff to stand up and to turn around in order to examine his injured wrists.

367. When the plaintiff stood up and turned around as ordered, he felt someone – whom the plaintiff thought was a guard – pull on his boxer shorts in order to conduct an illegal cavity search.

368. The plaintiff told defendant Antonuccio that someone was trying to put a finger in his rectum.

369. Defendant Antonuccio said: "Get the fuck out."

370. The plaintiff told defendant Antonuccio that he was not reporting the PREA against her, and that she needed to examine and to treat his injuries.

371. Defendant Antonuccio said that she would not examine the plaintiff and continued to say, "Get the fuck out."

372. While the plaintiff was insisting that defendant Antonuccio examine him, defendants John Doe #7 and Antonuccio were forcing him out of the room.

373. The plaintiff fell down in the hallway because of the injury to his knee, and he continued to ask defendant Antonuccio for medical care but she refused.

374. Defendants John Doe #7, John Doe #6, John Doe #5, and Best put the plaintiff into a restraint chair, and the plaintiff said, "I can't bend my right knee. It's broken!"

375. Forcing the plaintiff's injured knee into the restraint chair, defendant Best said, "I hope you kick me. I'll fuck you up," and tightened the straps.

376. Defendants John Doe #7, John Doe #6, John Doe #5, and Antonuccio watched defendant Best's forcing of the plaintiff's injured knee into the restraints and did not intervene, notwithstanding the plaintiff's repeated pleas for medical care.

377. Nearly unconscious and in extreme pain, the plaintiff was put into a strip search cage, where he remained on the floor and begged defendant Antonuccio for medical care.

378. Defendant Antonuccio then went to the strip search cage and said: "You know, I would have examined you and treated you until you began to throw around all those allegations against the officers."

379. In medical records, defendant Antonuccio said that she stopped the examination because the plaintiff "argued with an LT."

380. Defendant Antonuccio did not provide the plaintiff medical care of any kind, and did

381. The plaintiff was then put into the punishment cell, and defendant Walker enforced the 70% restriction policy, resulting in the plaintiff being deprived of all his property persisting from the dates November 22, 2022 - July 13, 2023, despite the fact that the plaintiff had sent defendants Irwin, George Little, Varner, and Moore a legion of request slips, letters, and grievances, pointing out that defendants Wells, Walker, and Mohoney were willfully depriving him of all his property and repeatedly accusing him of refusing to accept his property.

382. When the plaintiff was put into the punishment cell, he immediately told defendant Mohoney through the cell intercom, "Make sure all my property makes it to the RHU from FA. Two net bags and three boxes."

383. Defendant Mohoney said: "Sergeant Wells and I are trashing your property. Fuck you."

384. In retaliation for the plaintiff's reporting of defendant Wells and Knapp's abuse, defendant Wells then fabricated a misconduct report by saying that the plaintiff had punched his shoulder; defendants Wells and Knapp were the assaulters as opposed to the other way around.

385. On November 28, 2022, when the plaintiff attended the disciplinary hearing, defendant Fiscus denied his request to review the video footage of the incident, refused his request to call witnesses, who would have attested to his side of them and found him guilty of all charges, based on no evidence, resulting in a six month sentence in segregation, where the plaintiff was beaten and sexually abused repeatedly by the RHU guards, resulting in substantial injuries to his head, elbow, and wrists that caused atypical and significant hardships in relation to ordinary prison life.

386. The plaintiff filed an administrative misconduct appeal with defendants Blicha, Gustafson, and Irwin, pointing out these due process violations, as well as the abuse by defendants Wells and Knapp; defendants Blicha, Gustafson, and Irwin denied the plaintiff's appeal and accused the plaintiff of pleading guilty at the hearing with defendant Fiscus on November 28, 2022 - contrary to what the misconduct record says.

387. The plaintiff then filed a final level appeal with defendants Marsh and Molsak, pointing out that defendants Blicha, Gustafson, and Irwin had intentionally fabricated/tried to alter the misconduct record in order to cover-up defendants Wells and Knapp's abuse, by wrongfully accusing him of pleading guilty at the disciplinary hearing on November 28, 2022.

388. The misconduct record that defendant Fiscus had created after the hearing on November 28, 2022, correctly shows that the plaintiff had pled not guilty at the hearing on November 28, 2022, but defendants Blicha, Gustafson, and Irwin continued to accuse him of pleading guilty.

389. On January 19, 2023, defendants Marsh and Molsak remanded the misconduct appeal to defendants Irwin, Blicha,

Blicha and Gustafson: The same defendants who were carrying out this cover-up.

390. Nevertheless, defendants Blicha and Gustafson denied the remanded appeal on April 21, 2023 and seemingly accused the plaintiff of adding the "not" to "guilty" in the misconduct record; defendant Irwin upheld defendants Blicha and Gustafsons' response and denied the remanded appeal on May 11, 2023, with no explination.

391. The remanded appeal responses that defendants Irwin, Blicha, and Gustafson created says that the plaintiff had pled guilty on November 28, 2022, and had accepted a plea; the misconduct record that defendant Fiscus had created after the hearing on November 28, 2022, correctly says that the plaintiff had plead not guilty.

392. As a result of the retaliatory charges by defendant Wells; the denial of due process by defendant Fiscus; the denial of his appeals by defendants Irwin, Blicha, and Gustafson; and the failure of defendants Marsh, Moslak, and George Little to discipline defendants Irwin, Blicha, and Gustafson, the plaintiff suffered atypical and significant hardships during the 6 month DC sentance in segragation by way of the following reasons: (1) the plaintiff was put on 702 restrictions, resulting in denial of in cell property for 7 months, (2) the plaintiff was fed cold, raw food in a paper bag which made him physically sick, (3) the plaintiff was put into the feces, O.C. spray, and fly covered punishment cell with no toilet paper, no hygeine products, no linens or blankets, no basic issued clothes in freezing cold tempatures, with constant illuminated lights, and was denied cleaning supplies, (4) the plaintiff was denied all the privileges that ordinary prisoners have in general population, including recreation, yard, tablet, TV, visits, phone calls, commissary, phone calls, school, law library, daily showers, vocational programs, CSD and GLP pay periods, (5) the plaintiff was left depredating in his RHU cell for 7 months with nothing at all-no life, no movement, no socializing, no property, no books, no exercise, no legal work, no freedom, no liberty, ect., while defendants Blicha and Irwin were overtly fabricating each and every grievance response with respect to denial of his property, denial of legal exchange, and denial of medical care - with no regard for the laws, facts, policies, or the plaintiff's well being, (6) the plaintiff was denied medical care for broken wrists, broken right knee, broken elbow, brain damage, PTSD, anxiety, paranoia, thyroid problems, and heart problems, (7) the plaintiff's wrists are cut up and scarred from being cuffed every time he left his RHU cell, (8) the plaintiff was repeatedly beaten and sexually abused by the RHU guards, who continue to steal his legal work to detrail this litigation, (9) the plaintiff had spoken to a state trooper regarding the retaliatory abuse by the RHU guards, so one of the guards urinated all over his cell and mattress, forcing the plaintiff to sleep on the concrete floor where bugs crawled over him, causing back problems and loss of sleep and sores, (10) the RHU guards repeatedly spit in,

urinated in, and trashed his food with a motive to deter him from filling this lawsuit, causing substantial weight loss, (11) the RHU guards continue to fabricate misconduct charges, keeping the plaintiff confined idefinately in the RHU, by the directives of defendants Irwin, Blicha, and Gustafson, (12) the RHU guards obstruct outgoing mail every day in the RHU.

393. On ~~May~~ February 2, 2023, the plaintiff received a copy of his property inventory for the first time in the RHU and discovered that defendant Wells had conspired with defendant Mohoney, who ~~was~~ had been depriving the plaintiff of all his property and accusing him repeatedly of refusing to accept his property, to steal the following items from his property with malice: (1) Prisoners Self-Help Litigation Manual by John Boston and Dan Manville (ISBN 978-0-19-537440-7) = $69.95; (2) Meister Manual For Prisoners Lawsuits by David Meister (ISBN 9781946638072) = $29.95; (3) Jailhouse Lawyers: Prisoners Defending Prisoners v. the U.S.A by Mumia Abu Jamal (ISBN 978-0-87286-469-6) = $16.95; (4) The Criminal Law Handbook, 17th Edition by Paul Bergman et al. (ISBN 978-1-4133-2939-1) = $39.99; (5) Ultimate Guide to Home Repair and Improvement, 3rd Edition by Charles T. Byers = $29.99; (6) Hip-Hop Honeys by Brian Finkle = $35.00; (7) The Moxy Plot = ~~$30~~ $20.00; (8) a thousand dollars worth of case law copies; (9) the original 200 page civil complaint that took the plaintiff a year to draft (this lawsuit was articulatly drafted as part of the 200 pages, as well as a civil complaint that the plaintiff had planed to file against SCI-Quehanna until the statue of limitations was over); (10) irreplaceable legal notes with important dates; (11) all the plaintiff's records, including request slips, grievances, misconduct reports, copies, and all records that he needs ~~for~~ the in order to litigate this lawsuit.

394. As a result of the theft of his property by defendants Wells and Mohoney, the plaintiff's claim of retaliation by defendant Fox is incapable of being litigated by the plaintiff in this Court, because he cannot ascertain the date when the following events ~~occur~~ had occured (due to the fact his notes and records were stolen):

    (a) Either in 2021, or in 2022, defendant Fox and John Doe[#8] pulled the plaintiff out of his RHU cell because defendant Jones said he needed to speak with him regarding grievances he had filed against CO Blasko for starving him and denying him yard in the RHU.

    (b) While the plaintiff was telling defendant Jones that CO Blasko was giving him problems in the RHU by starving him and denying him yard every day, defendants Fox and John Doe[#8] were in the room encroaching in the dialog.

    (c) When defendants Fox and John Doe[#8] took the plaintiff back to his RHU cell, diner trays were on the unit.

    (d) Defendant Fox put the plaintiff in his cell and began to hand out the diner trays with defendant John Doe #8.

    (e) Defendant Fox came to the plaintiff's cell door pushing the cart full of trays and the plaintiff requested his tray.

(f) Defendant Fox vigorously shook his head no and said that he was not giving him a tray, because of the plaintiff's complaining to defendant Jones about CO Blasko.

(g) When the plaintiff began to bang on his cell door and ordered defendant Fox to give him a tray, defendant John Doe #8 came to his cell door and said, "Starve, dickhead," and left.

(h) In order to stay alive in the RHU, the plaintiff had to eat inedible things such as toilet paper and toothpaste, causing constipation resulting in his rectum bleeding every day when he tried to defecate persisting for two months, severe and agonizing stomache pain and cramps persisting for two months, fatigue, dizziness, vomiting, nausea, fainting, and agonizing hunger pains, and a chilling effect to his First Amendment right.

395. Because defendants Wells and Mahoney have stolen the plaintiff's legal work that comprised the date of when these events had occured, the plaintiff thereby cannot undertake discovery with respect to the claim of retaliation by defendants Fox and John Doe #8, nor can he enforce the claim of retaliation in this Court without knowing the date of when these retaliatory acts have occured.

396. Furthermore, the plaintiff suffered actual injury in his legal affairs because the statue of limitations has expired with respect to his prospective Eighth Amendment (Cruel and Unusual Punishment) and First Amendment (Retaliation) claims against Superintendant Blake and Unit Manager Youngflesh, who are employed at SCI-Quehanna:

(i) In March 2021, a few days after the plaintiff and four other inmates had reported their COVID-19 symptoms in a sick call request, Unit Manager ("UM") Youngflesh made them undergo testing and they all tested negative.

(ii) But then UM Youngflesh, assisted by Superintendant Blake, moved the plaintiff and the other four symptomatic inmates into a 9'x12ft tent that had no ventilation, had no running water, and the symptomatic inmates were vomiting on eachother because of the close proximity of the housing assignment.

(iii) Despite the fact that the plaintiff had filed an array of grievances with UM Youngflesh and had complained verbally to UM Youngflesh and Superintendant Blake about the impending risk of catching COVID-19 when housed in these squalid conditions and in such close proximity with symptomatic inmates, UM Youngflesh and Superintendant Blake forced the plaintiff to live in these conditions until he became infected by COVID-19 a week later and tested COVID-19 positive: The plaintiff suffered headaches, sores and aches, became violently ill, and suffers permanent loss of smell and taste.

(iv) When the plaintiff informed UM Youngflesh and Superintendant Blake that he was filing a civil action in relation to these events, they expelled him from the State Drug Treatment Program ("SDTP"), resulting in the taking of 48 months of

(f) Defendant Fox vigorously shook his head no and said that he was not giving him a tray, because of the plaintiff's complaining to defendant Jones about CO Blasko.

(g) When the plaintiff began to bang on his cell door and ordered defendant Fox to give him a tray, defendant John Doe #8 came to his cell door and said, "Starve, dickhead," and left.

(h) In order to stay alive in the RHU, the plaintiff had to eat inedible things such as toilet paper and tooth-paste, causing constipation resulting in his rectum bleeding every day when he tried to defecate persisting for two months, severe and agonizing stomache pain and cramps persisting for two months, fatigue, dizziness, vomiting, nausea, fainting, and agonizing hunger pains, and a chilling effect to his First Amendment right.

395. Because defendants Wells and Mahoney have stolen the plaintiff's legal work that comprised the date of when these events had occured, the plaintiff there by cannot undertake discovery with respect to the claim of retaliation by defendants Fox and John Doe #8, nor can he enforce the claim of retaliation in this Court without knowing the date of when these retaliatory acts have occured.

396. Furthermore, the plaintiff suffered actual injury in his legal affairs because the statue of limitations has expired with respect to his prospective Eighth Amendment (Cruel and Unusual Punishment) and First Amendment (Retaliation) claims against Superintendant Blake and Unit Manager Youngflesh, who are employed at SCI-Quebanna:

(i) In March 2021, a few days after the plaintiff and four other inmates had reported their COVID-19 symptoms in a sick call request, Unit Manager ("U.M.") Youngflesh made them undergo testing and they all tested negative.

(ii) But then UM Youngflesh, assisted by Superintendant Blake, moved the plaintiff and the other four symptomatic inmates into a 9'X'12 ft tent that had no ventilation, had no running water, and the symptomatic inmates were vomiting on eachother because of the close proximity of the housing assignment.

(iii) Despite the fact that the plaintiff had filed an array of grievances with UM Youngflesh and had complained verbally to UM Youngflesh and Superintendant Blake about the impending risk of catching COVID-19 when housed in these squalid conditions and in such close proximity with symptomatic inmates, UM Youngflesh and Superintendant Blake threatned forced the plaintiff to live in these conditions until he became infected by COVID-19 a week later and tested COVID-19 positive. The plaintiff suffered headaches, sores and aches, became violently ill, and suffers permanant loss of smell and taste.

(iiii) When the plaintiff informed UM Youngflesh and Superintendant Blake that he was filing a civil action in relation to these events, they expelled him from the State Drug Treatment Program ("SDTP"), resulting in the taking of 48 months of

his good time/commutation

(m) When the plaintiff had asked U.M. Youngflesh why all the symptomatic inmates were put into a small test together, U.M. Youngflesh said that SCI-Susehanna inmates were "reporting COVID-19 symptoms just to deter classes that they are required to complete as part of the SOTP program," and that "this new housing assignment was designed to deter them from pretending to be symptomatic."

(n) Two minutes after the plaintiff had threatened to file the lawsuit, U.M. Youngflesh directed a group of antagonistic guards to restrain the plaintiff and to lock him inside of a filthy cell, where the plaintiff cracked his head open on the toilet while he vomited through his mask because John Doe refused to uncuff him.

(o) On this same day, U.M. Youngflesh and Superintendant Blake transferred the plaintiff - COVID-19 positive - to SCI-Houtzdale, and then fabricated a misconduct report, saying that the plaintiff had threatened staff with bodily injury : A stark act of retaliation for the plaintiff's threatening to file the lawsuit.

(p) The plaintiff - suffocating behind a mask full of vomit, bleeding from his head, and nearly dead - was handcuffed behind his back, and was left in the back seat of the van for an hour, while two prospective defendants, John Doe and Jane Doe, whose responsibility was to transfer the plaintiff to SCI-Houtzdale by van, nonchalantly congregated with LT Furball outside of SCI-Houtzdale.

392. In addition to the preclusion of the claim pled in paragraphs 394 and 396 above, the plaintiff also suffered actual injury by way of him having to re-draft each and every claim in this lawsuit three times by recollection.

398. The plaintiff is by no means implicating that the allegations pled in this complaint are inaccurate, but when all these staff employed by Pennsylvania Department of Corrections violate his rights at the same time, then repeatedly steal all his notes and records, managing a civil case pro se is difficult for the plaintiff, while the RHU staff and defendant Walker constantly steal his flex pens and notebooks. (the plaintiff is in the process of exhausting remedies regarding these claims).

399. Because defendants George Little, Moore, Varner, Irwin, Blicha, Gustofson, Leslie, Snyder, Walker, and Fisura kept the plaintiff confined in the RHU from the dates November 22, 2022 - thru July 13, 2023 with no access to his legal property after defendants Wells and Mahoney had stolen his legal material, notwithstanding the fact that the plaintiff had sent on the dates 11/22/22 - 7/13/23 a large lumpsum of request slips, grievances, letters, grievance appeals, and misconduct appeals to defendants George Little, Moore, Varner, Irwin, Blicha, Gustafson, and Molsak, and Marsh, and Walker, pointing out that his civil claims were being hampered due to the malicious deprivation of his property by these defendants, the plaintiff lost his chance to litigate the claims

that are pled in paragraphs 394 and 396 above.

400. On March 5, 2023, defendant Slayder came to the plaintiff's cell door carrying what was left of the plaintiff's property - a box of old accumulated paperwork, address books, newspapers, magazines, and catalogs - because defendant Slayder said that he was conducting the plaintiff's legal exchange.

401. The plaintiff told defendant Slayder, "I've been denied all my property since November, but I have kraft envelopes full of DOC paperwork that I accumulated during the past 4 months, and I need to exchange them for legal material in order to file a lawsuit against SCI-Forest."

402. What the plaintiff needed from his property during this legal exchange was a prison legal news that had directions on how to order legal books from prison legal news.

403. Defendant Slayder said: "You ain't filing shit because I ain't giving you shit. I'll kill you," and left with the property.

404. The plaintiff then repeatedly waived the kraft envelopes around and kept screaming, "Slayder! I need a legal exchange to file a lawsuit!"

405. About two minutes after these events, defendant Lesho came to the plaintiff's cell door, accompanied by defendant Slayder, who still had the property with him.

406. The plaintiff informed defendant Lesho that he needed legal material to file a lawsuit against SCI-Forest.

407. Defendant Lesho gave the plaintiff his eye glasses but said, "Your not allowed to have any legal material in your cell."

408. The plaintiff told defendant Lesho, "I've been denied all my property since November, and it's costing me my civil case."

409. Defendant Lesho said: "If you file a lawsuit I'll kill you," and began to walk away with defendant Slayder.

410. Seeing that this might have been his only chance to procure any property, the plaintiff reached his hand out of the cell's wicket and attempted to grab the prison legal news from the property.

411. Defendants Lesho and Slayder repeatedly smashed and slammed the cell's wicket door on the plaintiff's hand and fingers, and one of the defendants said, "Suck my fucking dick."

412. Defendants Lesho and Slayder then left with the property and did not conduct the plaintiff's legal exchange.

413. While defendant Lesho was putting the property back into the property cage, the plaintiff was asking for medical care for his injured hand and fingers, but defendant Lesho said, "Prisoners who file lawsuits don't get

medical care or property in their cells. Fuck your injured finger."

414. Defendants Lesho and Slayder denied the plaintiff's requests for medical care and knew that he ~~was so~~ suffered serious injuries to his hand and fingers; the plaintiff suffered a disfigured left h thumb that was black and blue for five months; loss of his entire fingernail on his left thumb; soreness and aches to his left hand; cuts and abrasions to his left hand; inability to move, bend or use his left hand for five months; severe pain; a bloody left hand; and increased PTSD, ~~and~~ anxiety, and night terrors that an x-ray technician refused to treat with pain medication, bandages, and anti-biotics after CRNP Gressle ~~as~~ had referred the plaintiff to him on March 6, 2023, to undergo testing.

plaintiff languished

~~testing~~ 415. On March 6, 2023, after ~~languishing~~ in the PADOC for 517 days without any psychiatric care, CRNP Gressle at SCI-Forest re-prescribed his Remoran which he now takes every day, as well as Boostbar and Minipress for anxiety, PTSD, night terrors, and depression; however, CRNP Gressle, PSS WagonSeller, PSS Crissman, PSS Kline, and defendant Irwin continue to fabricate the plaintiff's medical records and documents, saying that the plaintiff has no psychological trauma, no paranoia, no hallucinations, and is refusing offers for psycho therapy.

416. The plaintiff has urged all these providers nearly everyday to provide him with psychotherapy and more medication for the foregoing disorders and the trauma he has ~~endured~~ incurred as a result of the deprivation of psychiatric care, but they refuse and then fabricate records, saying plaintiff is refusing the offers.

417. On May 11, 2023, during a PRC meeting, defendant Irwin told the plaintiff, "My guards are fabricating these misconduct reports because your RHU time is indefinate due to the grievances that you file," and then called the plaintiff a "snitch" when the plaintiff said that he would contact the Secretary of Corrections regarding all these fabricated documents.

418. On July 13, 2023, after being beaten repeatedly by the property officers in retaliation for his requesting of legal materials to file this lawsuit, the plaintiff was afforded access to his property for the first time in the RHU by way of a legal exchange.

419. During this legal exchange with Co Hicks the plaintiff found that all the items listed in paragraph 393 of this complaint were stolen by defendants Wells and Mobney.

420. Each and every mail interference described in this complaint has chilled the plaintiff's open communication with the Court by mail, since the mail interferances has allowed the plaintiff to be identified as a critic of the Pennsylvania Department of Corrections.

421. By virtue of defendants Harry's and George Little's 709 restriction policy, these defendants employed by PADOC have overstepped their legal boundaries and created a dangerous environment for litigous prisoners like the plaintiff, who are members of an identified class of targeted individuals and subject to the continual control of PADOC staff, leaving perverse incentives for the PADOC staff to subject these prisoners and the plaintiff to the 709 restrictions again in order to compromise his/their litigation.

422. Overall, these defendants' participation in an overarching, collectively agreed-upon course of retaliatory, arbitrary, and cruel conduct intended to cover up official malfeasance and unacceptable treatment are all related to a cost-cutting policy of defendants MHM, George Little, Harry, Varner, Moore, Bennett, Gailey, Mooney, Ivicic, English, Klinefelter, Smith, Sechrengost, McDowel McCoy, James and Bresnahan, who have a de facto policy of allowing a code of silence to bind their/its employees in service to a state-wide practice of inadequately staffing, training, screening, and disciplining their/its subordinate employees, resulting in the lacks of adequate organization, and control in the administration of health care, administrative back logs, failure to adequately maintain medical records and the plaintiff's Digital Master Log, and failure to adequately investigate and to prevent wide-spred abuse and mail interferances in the Pennsylvania Department of Corrections.

423. The plaintiff has sent a letter addressed to defendant Harry with respect to z-code status, and mail interferances, and indefinate RHU sanctions, and defendants Harry, George Little, Bennett, Varner, Moore, Irwin, Blicha, Gustafson, Simmons, Cummins, and Miller know that the plaintiff will not coexist in a cell with another person; however, they have pre-meditated plans either to continue directing the guards at SCI-Forest to fabricate misconduct reports against the plaintiff, or to perpetuate this violent orchestration by releasing him to general population with a cellmate, willfully disregarding the fact that it will result in another violent confrontation between him and any inmate who is put into a cell with him, and creating a risk of the type that will result in death or SBI, either to him or to any prospecitve cell mate living in a cell with him.

## Claims for Relief

424. The actions of defendants Dr. Bloom and Ligas in discontinuing the plaintiff's prescribed psychiatric medication, or denying him psychiatric medication, or failing to follow up, or denying him court ordered psychological programs and psychotherapy constituted deliberate indifferance to the plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

425. The actions of defendant Ligas in discontinuing the plaintiff's prescribed psychiatric medication constituted

retaliation for the plaintiff's reporting of mental health concerns to PSS Hartman and CRNP Knowles in violation of the First Amendment to the United States Constitution.

426. The denial of psychiatric care by defendants Ligas, Dr. Bloom, Keith, Bordas, Peacock, Korb, Eisenberg, MHM, Bennett, George Little, Varner, Moore, Klinefelter, Smith, Ivicic, Sechrengost, Harry, and Bresnahan, or their failure to take disciplinary or other actions to curb the known denial of psychiatric care commit by Ligas, Dr. Bloom, Keith, Bordas, Peacock, Korb, and Eiseberg, constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment to the U.S. Constitution.

427. The denial of psychiatric care by defendants Ligas, Dr. Bloom, Keith, Bordas, Peacock, Korb, Eisenberg, MHM, Bennett, George Little, Varner, Moore, Klinefelter, Smith, Ivicic, Sechrengost, Harry, and Bresnahan, or their failure to take remedial actions to curb the known denial of psychiatric care, constitutes a conspiracy to violate Eighth Amendment Rights.

428. The denial of psychiatric care by defendants Ligas, Dr. Bloom, MHM, Keith, Bordas, Peacock, Korb, Eisenberg, Bennett, George Little, Varner, Moore, Klinefelter, Smith, Ivicic, Sechrengost, Harry, and Bresnahan, or their failure to take remedial actions to curb the known denial of psychiatric care, constitutes the torts of intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence under the law of PA.

429. The actions of defendants Keith and Dr. Bloom in pushing back the plaintiff's psychiatric evaluations constituted retaliation for the plaintiff's filing of grievances against them in violation of the First Amendment to the U.S. Constitution.

430. The actions of defendants Keith and Dr. Bloom in pushing back the plaintiff's psychiatric evaluations in retaliation for the plaintiff's filing of grievances against them constituted the torts of intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence under the law of PA.

431. The actions of Smith, Ivicic, Bresnahan, Timothy Little, Defelice, Klinefelter, Irwin, Blicha, Gustafson, Cummins, Miller, Simmons, Wells, Knapp, Bennett, George Little, Harry, Varner, Moore, in orchestrating a violent confrontation between the plaintiff and his cell mates by revoking his Z-code and placing him in a cell with other people, or in failing to take disciplinary actions or other action to ensure that plaintiff has a Z-code, are done to exploit, goad, and taunt his mental health problems and propensity for violence, and constitutes medical indifference, cruel and unusual punishment, and failure to protect in violation of the Eighth Amendment to the United States Constitution.

432. The actions of Smith, Ivicic, Bresnahan, Timothy Little, Defelice, Klinefelter, Irwin, Blicha, Gustafson, Cummins, Miller, Simmons, Wells, Knapp, Bennett, George Little, Harry, Varner, Moore, in orchestrating a violent confrontation between the plaintiff and his cell mates by revoking his Z-code and placing him in a cell with other people, or in failing to take disciplinary actions or

other actions to ensure that the plaintiff has a z-code, are done to exploit, goad, and taunt his mental health problems and propensity for violence, and constitutes a conspiracy to violate Eighth Amendment rights.

433. The actions of defendants Smith, Ivicic, Bresnahan, Timothy Little, Defelice, Irwin, Blicha, Gustafson, Simmons, Cummins, Miller, Wells, Knapp, Bennett, George Little, Harry, Varner Moore, in orchestrating a violent confrontation between the plaintiff and his cell mates by revoking his z-code and placing him in a cell with other people, or in failing to take disciplinary or other action to ensure that the plaintiff has a z-code, are done to exploit, goad, and taunt his mental health problems and propensity for violence, and constitutes the torts of intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence under the law of PA.

434. The actions Smith, Ivicic, Bresnahan, Timothy Little, and Defelice in revoking the plaintiff's z-code and placing him in a cell with another person constituted retaliation for the plaintiff's complaints at a PRC meeting and for his filing of a grievance against them in violation of the First Amendment to the United States Constitution.

435. The actions of defendants Smith, Ivicic, Bresnahan, Timothy Little, and Defelice in revoking the plaintiff's z-code and placing him in a cell with another person in retaliation for the plaintiff's complaints at a PRC meeting and for his filing of a grievance against them constituted a conspiracy to violate First Amendment rights.

436. The actions of defendants George Little, Irwin, Blicha, Gustafson, Simmons, Miller, Cummins, Wells, and Knapp in placing the plaintiff in a cell with other people constituted retaliation for the plaintiff's complaints at a PRC meeting and for ~~the~~ his sending of a complaint addressed to defendant George Little in violation of the First Amendment to the U.S. Constitution.

437. The actions of defendants George Little, Irwin, Blicha, Gustafson, Simmons, Miller, Cummins, Wells, and Knapp in placing the plaintiff in a cell with other people ~~constituted~~ in retaliation for the plaintiff's complaints at a PRC meeting and for his sending of a complaint addressed to defendant George Little constituted a conspiracy to violate First Amendment rights.

438. The actions of defendants Dyche, Young, Horb, Rousell, Bushirk, Gendel, Hardy, Olsen, CO Bloom, Jones, McDowell, John Doe #3, Wells, Knapp, Best, John Doe #5, John Doe #6, John Doe #7, Miller, Lesho, Slayder, Irwin, Mooney, McCoy, Klinefelter, Walker, George Little, Harry, Varner, Moore, and Bennett in using sexual abuse and/or physical abuse and/or O.C. spray against the plaintiff without need or provocation, or in failing to intervene to prevent the abuse of inmates by defendants Dyche, Young, Bushirk, Rousell, Horb, Gendel, Hardy, Olsen, CO Bloom, John Doe #3, Jones, McDowell, Wells, Knapp, Best, John Doe #5, John Doe #6, John Doe #7, Lesho, and Slayder, were done maliciously and sadistically and constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

439. The actions of defendants Dyche, Young, Korb, Rousell, Bushirk, Gondek, Hardy, Olsen, Co Bloom, Jones, McDowell, John Doe #3, Wells, Knapp, Best, John Doe #5, John Doe #6, John Doe #7, Miller, Lesho, Slayder, Irwin, Mooney, McCoy, Klinefelter, Walker, George Little, Harry, Varner, Moore, and Bennett in using sexual abuse and/or physical abuse and/or O.C. spray against the plaintiff without need or provocation, or in failing to prevent the abuse, or in failing to take disciplinary or other action to curb the known pattern of physical and sexual abuse of inmates by defendants Dyche, Young, Bushirk, Rousell, Gondek, Korb, Lesho, Slayder, CO Bloom, Hardy, Olsen, Jones, McDowell, John Doe #3, Wells, Knapp, Best, John Doe #5, John Doe #6, John Doe #7, were done maliciously and sadistically and constituted a conspiracy to violate Eighth Amendment rights.

440. The actions of defendants Dyche, Young, Bushirk, Rousell, Korb, Gondek, Hardy, Olsen, Co Bloom, Jones, McDowell, John Doe #3, Wells, Knapp, Best, John Doe #5, John Doe #6, John Doe #7, Miller, Lesho, Slayder, Irwin, Mooney, McCoy, Klinefelter, Walker, George Little, Harry, Varner, Moore, Smith, Bennett in using sexual abuse and/or physical abuse and/or O.C. spray against the plaintiff, or in failing to intervene to prevent the abuse, or in failing to take disciplinary or other action to curb the known pattern of physical and sexual abuse of inmates constituted the torts of intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and assault and battery under the law of PA.

441. The actions of defendants Dyche, Young, Bushirk, Rousell, Korb, and Gondek in using physical and sexual abuse and O.C. spray against the plaintiff, or in failing to intervene to prevent the abuse constituted retaliation for the plaintiff's filing of a grievance against defendants Keith and Dr. Bloom, and for the plaintiff's requesting of legal work to file a lawsuit, and for his complaints about the inhumane prison conditions in violation of the First Amendment.

442. The actions of defendants Dyche, Young, Bushirk, Rousell, Korb, and Gondek in using physical and sexual abuse and O.C. spray against the plaintiff in retaliation of the plaintiff's requesting of his legal work to file a lawsuit, and for his filing of a grievance against defendants Keith and Dr. Bloom, and for his complaints about the inhumane prison conditions constituted a conspiracy to violate First Amendment rights.

443. The actions of defendants Mathews, Buterbaugh, Dyche, Young, Mooney, McDowell, Bartley, and Cartwright in confining the plaintiff in the inhumane conditions of the punishment cell constituted retaliation and cruel and unusual punishment in violation of the First Amendment and Eighth Amendment to the United States Constitution.

444. The failure of defendants John Doe #1, Jane Doe #1, Lowery, Antonuccio, George Little, Harry, Klinefelter, Varner, Jones, CO John Doe #3, Hardy, McDowell, Bennett, Bloom, Olsen, and Moore to provide medical treatment for the plaintiff's injuries or decontamination of O.C. spray after the abuse by defendants Dyche, Young, Korb, Bushirk, Gondek, Rousell, Wells, Knapp, Best, John Doe #3, John Doe #5, John Doe #6,

John Doe #7, Miller, CO Bloom, Hardy, Olsen, constituted deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

445. The failure of defendants John Doe #1, Jane Doe #1, Lowery, Antonuccio, Jones, McDowell, CO Bloom, John Doe #3, Hardy, Olsen, and George Little, and Bennett to provide medical treatment for the injuries sustained and decontamination of O.C. spray after the abuse by, or in failing to provide examination of the plaintiff after the abuse by defendants Dyche, Young, Korb, Bushick, Rousell, Gondek, Wells, Knapp, Best, John Doe #3, John Doe #5, John Doe #6, John Doe #7, Miller, CO Bloom, Hardy, and Olsen constituted retaliation for the plaintiff's reporting of physical and sexual abuse in violation of the First Amendment to the United States Constitution.

446. The failure of defendants Jones, McDowell, CO Bloom, John Doe #3, Hardy, and Olsen to provide medical treatment for the injuries sustained and decontamination of O.C. spray in retaliation for the plaintiff's report contacting of the Court by mail constituted a conspiracy to violate Eighth Amendment and First Amendment rights.

447. The failure of defendants John Doe #1, Jane Doe #1, Lowery, Antonuccio, Jones, McDowell, CO Bloom, Hardy, Olsen, Varner, Klinefelter, Moore, George Little, and Bennett to provide medical treatment for the injuries sustained and decontamination of O.C. spray after the abuse constituted the torts of intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence under the law of P.A.

448. The actions of defendants Mooney, Buterbaugh, Pierce, and Peacock in recording the plaintiff's medical examinations on a handheld camera, or in being present during the examinations, or in ordering the examinations to be recorded on a handheld camera denied the plaintiff's right to medical privacy in violation of the First Amendment and Fourteenth Amendment to the United States Constitution.

449. The actions of defendants Bennett, George Little, Harry, Moore, Varner, Smith, Klinefelter, Mooney, Bailey, Matthews, Buterbaugh, Dyche, Tate, Morris, Kawalyk, McDowell, McCoy, English, Patrick, James, John/Jane Doe #4, John Doe #2, John Doe #3, Hardy, CO Bloom, Olsen, Dr. Bloom, Neidrich, Keith, Jones, Cartwright, and Bartley in promulgating/carrying out a policy, practice, and custom of intentionally interfering with delivery of the plaintiff's mail, or in opening, reading, and tampering with his mail outside of the plaintiff's presence, or in failing to take disciplinary or other action to curb the known pattern of interfering with delivery of the plaintiff's mail, are done maliciously in retaliation for the plaintiff's contacting of the Court by mail, and for his attempting to appeal a grievance with defendants Varner and Moore, and denies the plaintiff's right to free speech, access to the Court, right to petition, and freedom of

association in violation of the First Amendment and Fourteenth Amendment to the United States Constitution.

450. The actions of defendants Bennett, George Little, Harry, Moore, Varner, Smith, Klinefelter, Mooney, Gailey, Mattews, Buterbaugh, Dyche, Tote, Morris, Kawalyk, Patrick, McDowell, McCoy, English, James, John Doe/Jane Doe #4, John Doe #2, John Doe #3, Hardy, CO Bloom, Olsen, Dr. Bloom, Neidwich, Keith, Jones, Cartright, and Bartley in promulgating/carrying out a policy, practice, and custom of intentionally obstructing and stealing the plaintiff's mail, or in failing to take disciplinary or other action to curb the known pattern of mail theft, constitutes unlawful search and seizure in violation of the Fourth Amendment to the United States Constitution.

451. The actions of Bennett, George Little, Harry, Moore, Varner, Smith, Klinefelter, Gailey, Mattews, Mooney, Buterbaugh, Dyche, Dyche, Tote, Morris, Kawalyk, Patrick, McDowell, McCoy, English, James, John Doe/Jane Doe #4, John Doe #2, John Doe #3, Hardy, CO Bloom, Olsen, Jones, Cartwright, and Bartley in promulgating/carrying out a policy, practice, and custom of denying the plaintiff a meaningful post-deprivation remedy and notice of non-delivery when the plaintiff's mail was unlawfully obstructed on April 25, 2022; April 26, 2022; May 27, 2022; May 30, 2022; June 10, 2022; August 11, 2022; August 13, 2022; September 7, 2022; and October 21, 2022, denied the plaintiff due process of law and liberty to communicate with the Court by mail in violation of the Fourteenth Amendment to the United States Constitution.

452. The actions of defendants Bennett, George Little, Harry, Varner, Moore, Smith, Klinefelter, Mooney, Gailey, Mattews, Buterbaugh, Dyche, Tote, Morris, Kawalyk, Patrick, McDowell, McCoy, English, James, John/Jane Doe #4, John Doe #2, John Doe #3, Hardy, CO Bloom, Olsen, Dr. Bloom, Neidwich, Keith, Jones, Cartwright, and Bartley as described in paragraphs 449, 450, and 451, constitutes a conspiracy to violate First, Fourth, and Fourteenth Amendment rights.

453. The actions of defendants Bennett, George Little, Harry, Varner, Moore, Smith, Klinefelter, Mooney, Gailey, Mattews, Buterbaugh, Dyche, Tote, Morris, Kawalyk, Patrick, McDowell, McCoy, English, James, John Doe/Jane Doe #4, John Doe #2, John Doe #3, Hardy, CO Bloom, Olsen, Dr. Bloom, Neidwich, Keith, Jones, Cartwright, and Bartley as described in paragraphs 449, 450, and 451, constitutes the tort of negligence under the law of PA.

454. The actions of defendants Bennett, George Little, Harry, Moore, Varner, Smith, Klinefelter, Mooney, Gailey, Mattews, Buterbaugh, Dyche, Tote, Morris, Kawalyk, Patrick, McDowell, McCoy, English, James, John/Jane Doe #4, John Doe #2, John Doe #3, Hardy, CO Bloom, Olsen, Dr. Bloom, Neidwich, Keith, Jones, Cartwright and Bartley in promulgating/carrying out a policy, practice, and custom of denying the plaintiff's delivery of mail but allowing similarly situated inmates to send and receive mail, are done intentionally, and constitutes discrimination in violation of the

Equal protection clause of the Fourteenth Amendment to the United States Constitution.

455. The actions of defendants Bennett, George Little, Harry, Moore, Varner, Smith, Klinefelter, Mooney, Gailey, Mattews, Buterbaugh, Dyche, Tote, Morris, kawalyk, Patrick, McDowell, McCoy, English, James, John/Jane Doe #4, John Doe #2, John Doe #3, Hardy, CO Bloom, Olsen, Dr. Bloom, Neidwich, Keith, Jones, Cartwright, and Bartley in promulgating/carrying out a policy, practice, and custom of denying the plaintiff's ~~clare~~ delivery of mail but allowing similiarly situated inmates to send and receive mail, are done intentionally, and constitutes a conspiracy to violate the equal protection clause of the Fourteenth Amendment to the United States Constitution.

456. The actions of defendants Bennett, George Little, Harry, McCoy, McDowell, Klinefelter, Gailey, Varner, Moore, Hardy, James, CO Bloom, Jones, John Doe #3, and Olsen in spraying O.C. spray on the plaintiff and restraining him without need or provocation, or failing to intervene to prevent the misuse of force, or in failing to take disciplinary or other action to curb the known pattern of reprisals and abuse of inmates by defendants Hardy, Jones, CO Bloom, John Doe #3, McDowell, and Olsen constituted retaliation for the plaintiff's contacting of the Court by mail in violation of the First Amendment to the United States Constitution,

457. The actions of defendants Bennett, George Little, Harry, McCoy, McDowell, Klinefelter, Gailey, Varner, Moore, Hardy, James, CO Bloom, John Doe #3, and Olsen in spraying O.C. spray on the plaintiff and restraining him without need or provocation, or in failing to intervene to prevent the misuse of force, or in failing to take disciplinary or other action to curb the known pattern of reprisals and abuse of inmates by defendants Hardy, Jones, CO Bloom, John Doe #3, McDowell, and Olsen, were done in retaliation for the plaintiff's contacting of the court by mail, and constituted a conspiracy to violate First Amendment rights.

458. The actions of defendants Bennett, George Little, Harry, Moore, Varner, Smith, Klinefelter, Mooney, Gailey, Mattews, Buterbaugh, Tote, Morris, kawalyk, Patrick, McDowell, McCoy, English, James, John Doe/Jane Doe #4, John Doe #2, John Doe #3, Hardy, CO Bloom, Olsen, Neidwich, Jones in fabricating the Digital Master Log, or failing to take disciplinary or other action to curb the known pattern of fabricating the Digital Master Log, ~~were~~ are done to conceal the mail interferences and abuse in retaliation for the plaintiff's contacting of the court by mail, ~~denied~~ denies the plaintiff access to court with respect to the claim pled in this complaint regarding mail interference and abuse, and constitutes spoilation of evidence in violation of the First Amendment to the United States Constitution.

459. The actions of defendants George Little, Bennett, Varner, Moore, McDowell, Klinefelter, Naidwich, Bartley, Cardwright, Gailey

Nunez, Mooney, and Moslak in carrying out a premeditated premeditated plan to fabricate a misconduct report against plaintiff to justify a retaliatory placement in segregation, or in confining the plaintiff in the inhumane conditions of the punishment cell in segregation, or in denying the plaintiff due process at the disciplinary hearing, or in upholding the disciplinary decisions, or failing to mail the plaintiff's grievance appeal to defendants Varner and Moore, or failing to take disciplinary or other action to curb the known pattern of reprisals and mail interference by defendants McDowell, Guiley, Neidwich, Bartley, and Cartwright constituted retaliation for the plaintiff's filing of a grievance appeal, and denied his right to free speech and association in violation of the First Amendment to the United States Constitution.

460. The actions of defendants McDowell, Klinefelter, Neidwich, Bartley, Cartwright, Nunez, Mooney, and Moslak in carrying out a premeditated plan to fabricate a misconduct report against the plaintiff to justify a retaliatory placement in segregation, or denying the plaintiff's due process rights at the disciplinary hearing, or upholding the disciplinary decisions, or failing to mail the plaintiff's grievance appeal to defendants Varner and Moore, were done in retaliation for the plaintiff's filing of a grievance appeal, denied his right to free speech and association, and constituted a conspiracy to violate First Amendment.

461. The actions of Nunez and Fiscus in denying the plaintiff an opportunity to adequately defend himself against the fabricated misconduct charges at the disciplinary hearings by denying the plaintiff's request to call witnesses or to bring forward evidence, finding him guilty of all charges with no evidence to support the charges, denying his request to review review video footage, providing an inadequate written disposition of the charges, and of defendants Klinefelter, Irwin, Blicha, and Gustafson, Marsh, George Little, Harry, Bennett, Varner, Moore, and Moslak in upholding the disciplinary decision, or fabricating the misconduct appeals, or directing their guards to fabricate misconduct charges against the plaintiff, or failing to take disciplinary or other action to curb the known pattern of due process violations, is resulting in the plaintiff's indefinate confinement in segregation, and denies the plaintiff due process of law in violation of the Fourteenth Amendment to the United States Constitution.

462. The actions of defendants Nunez, Fiscus, Klinefelter, Irwin, Blicha, Gustafson, Marsh, George Little, Harry, Bennett, Varner, Moore, and Moslak as described in paragraph 461 above, constitutes a conspiracy to violate Fourteenth Amendment rights.

463. The actions of defendants Irwin, Blicha, Gustafson, George Little, Marsh, and Moslak in fabricating the misconduct appeals by saying that the plaintiff pleaded guilty of assaulting staff constituted spoilation of evidence, denies the plaintiff due process of law and access to the court, and were done in retaliation for the plaintiff's reporting of the abuse by defendants Wells and Knapp in violation of the First Amendment to the United States Constitution.

464. The actions of defendants Irwin, Blicha, Gustofson, George Little, Marsh, ~~George White, Harry, Bennett, Varner, Moore~~, and Moslak in fabricating the misconduct appeals, by saying that the plaintiff pleaded guilty of assaulting staff, or failing to take remedial actions to correct the record, were done in retaliation for the plaintiff's reporting of the abuse by defendants Wells and Knapp and constituted a conspiracy to violate First Amendment rights.

465. The actions of defendants George Little, Harry, Varner, Moore, Klinefelter, Irwin, Blicha, Gustafson, Ivicic, Marsh, and McDowell in transfering the plaintiff to SCI-Forest, or in upholding the transfer, are done as a cost cutting policy, and constitutes retaliation for the plaintiff's filing of a grievance against defendant Keith and for his sending of a complaint addressed to defendant Bennett in violation of the First Amendment to the United States Constitution.

466. The actions of defendants George Little, Harry, Varner, Moore, Klinefelter, Irwin, Blicha, Gustafson, Ivicic, Marsh, and McDowell with respect to the plaintiff's retaliatory transfer described in paragraph 465 above, constitutes a conspiracy to violate First Amendment rights.

467. The actions of defendants Wells, Knapp, Best, John Doe #5, John Doe #6, John Doe #7, and Miller in using physical force against the plaintiff without need or provocation, or failing to intervene to prevent the misuse of force, constituted retaliation for the plaintiff's reporting of abuse by defendants Wells and Knapp and for his sending of a complaint addressed to defendant George Little in violation of the First Amendment to the United States Constitution.

468. The actions of defendants Wells, Knapp, Best, John Doe #5, John Doe #6, John Doe #7, and Miller in using physical force against the plaintiff without need or provocation, or failing to intervene to prevent the misuse of force, were done in retaliation for the plaintiff's reporting of abuse by defendants Wells and Knapp and for his sending of a complaint addressed to defendant George Little and constituted a conspiracy to violate First Amendment rights.

469. The actions/inactions of defendants George Little, Varner, Moore, Irwin, Walker, Mohney, Lesho, Slayder, Marsh, and Moslak in depriving the plaintiff of all of his property for seven months in the RHU denied the plaintiff due process of law and constituted cruel and unusual punishment, unlawful search and seizure, and retaliation for the plaintiff's filing of a grievance against defendants Wells and Knapp regarding their theft of the plaintiff's property in violation of the First, Fourth, Eighth, and Fourteenth Amendment.

470. The actions of defendants Wells and Knapp in fabricating a misconduct report against the plaintiff, saying he assaulted staff constituted retaliation for the plaintiff's reporting of their abuse in violation of the First Amendment to the United States Constitution.

471. The actions of defendants Wells and Knapp in fabricating a misconduct report against the plaintiff, saying he assaulted staff in retaliation for the plaintiff's reporting of their abuse constituted a conspiracy to violate First Amendment rights.

472. The 709 restriction policy promulgated by defendants Bennett, George Little, Harry, Varner, Moore, Smith, Klinefelter, Bresnahan, Dr. Bloom, Mooney, Oyche, Buterbaugh, Walker, and Irwin denies litigous prisoners like the plaintiff access to the court, the right to petition, the right to free speech and association, the right of due process, the right to liberty in communicating with the court by mail, and constitutes cruel and unusual punishment in violation of the First, Eighth, and Fourteenth Amendments to the United States Constitution.

473. The actions of defendants Wells and Mobney in stealing the plaintiff's property without providing notice or a meaningful post/pre-deprivation remedy, denies the plaintiff due process of law in violation of the Fourteenth Amendment.

474. The actions of defendants Wells, Mobney, George Little, Harry, Irwin, Varner, Moore, and Walker in stealing the plaintiff's property, or failing to take disciplinary or other action to return the stolen property of the plaintiff's, denies the plaintiff access to the court, and constituted retaliation for the plaintiff's reporting of the physical abuse by defendants Wells and Knapp in violation of the First Amendment.

475. The actions of defendants Wells, Mobney, George Little, Harry, Irwin, Varner, Moore, and Walker as described in paragraphs 473 and 474, constitutes a conspiracy to violate First and Fourteenth Amendment rights.

476. The actions of defendants Wells, Mobney, George Little, Harry, Irwin, Varner, Moore, and Walker in stealing the plaintiff's property, or failing to take disciplinary or other action to return the plaintiff's stolen property, constitutes unlawful search and seizure in violation of the Fourth Amendment to the United States Constitution.

477. The actions of defendants Wells, Mobney, George Little, Harry, Irwin, Varner, Moore, and Walker in stealing the plaintiff's property, or failing to take disciplinary or other action to return the plaintiff's stolen property, constitutes the tort of negligence under the law of PA.

478. The actions of defendants Youngflesh, Blake, John Doe,[#9] and Jane Doe[#2] in moving the plaintiff into a small tent with symptomatic inmates, or transfering him to SCI-Houtzdale COVID-19 positive constituted deliberate indifference to the plaintiff's serious medical needs, and cruel and unusual punishment, and inhumane prison condititions in violation of the Eighth Amendment to the United States Constitution.

479. The actions of defendants Fox and John Doe[#8] in denying the plaintiff a diner tray constituted retaliation for the plaintiff's complaining to defendant Jones.

480. The actions of defendants Fox and John Doe[8] in denying the plaintiff a dinner tray in retaliation for the plaintiff's complaining to defendant Jones constituted a conspiracy to violate First Amendment rights.

481. The actions of defendants Youngflesh, Blake, and Blake in moving the plaintiff in a small content with symptomatic inmates, expelling him from SDTP, fabricating a misconduct report against him, and transfering him to SCI-Hartzdale CoVID-19 positive constituted retaliation for the plaintiff's reporting of CoVID-19 symptoms and for his threatening to file a civil action in violation of the First Amendment to the United States Constitution.

482. The actions of defendants Lesko and Slayder in denying the plaintiff's legal exchange, smashing his hand and fingers in the cell's wicket, and denying him medical treatment for the injuries sustained constituted retaliation for the plaintiff's attempt to gain access to legal material to file a lawsuit against SCI-Forest in violation of the First Amendment to the United States Constitution.

483. The actions of defendants Lesko and Slayder in denying the plaintiff medical treatment for the injuries sustained as a result of the reprisal described in paragraph 482 above constituted deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment to the U.S. Constitution.

484. The actions of defendants Lesko and Slayder in denying the plaintiff's legal exchange, smashing his hand and fingers in the cell's wicket, and denying him medical treatment for the physical injuries sustained in retaliation for the plaintiff's attempt to gain access to legal material to file a lawsuit against SCI-Forest constituted a conspiracy to violate First and Eighth Amendment rights.

### Relief Requested

WHEREFORE, plaintiff requests that the court ~~good~~ grant the following relief:

A. Issue a declaratory judgement stating that:

1. The actions of defendants George Little, Harry, Varner, Moore, Bennett, Klinefelter, Irwin, Timothy Little, Cummins, Dedelice, Miller, Bresnahan, Simmons, Blicha, Gustafson, and lucie in forcing the plaintiff to live in a cell with another person violated, and will violate, the plaintiff's rights under the Eighth Amendment to the United States Constitution.

2. The interference with delivery of the plaintiff's mail by defendants Bennett, George Little, Harry, Moore, Varner, Klinefelter, Gailey, Mooney, Matthews, Butterbaugh, Tate, Morris, hawalyk, McDowell, McCoy, English, Patrick, James, John Doe/same Poe #1, John Doe #2, John Doe #3, Lo Bloom, Olsen, Hardy, Jones, D. Bloom, Neidwich, Bartley, Cartwright,

or their agents employed by Pennsylvania Department of Corrections violated, and continues to violate, the plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

3. The 704 restriction policy of defendants Bennett, George Little, Harry, Moore, Varner, Klinefelter, Gailey, Mooney, Mathews, Buterbaugh, McCoy, ~~m~~ Bresnahan, ~~and~~ Dr. Bloom, and Smith violated, and continues to violate, the plaintiff's and prisoners' rights under the First, Fourth, ~~and~~ Eighth, and Fourteenth Amendment to the United States Constitution.

4. The transfer of the plaintiff from SCI-Houtzdale to SCI-Forest by defendants George Little, Harry, Marsh, Klinefelter, Ivicic, McDowell, Irwin, Blicha, and Gustofson violated, and continues to violate, the plaintiff's rights under the First Amendment to the United States Constitution.

5. The theft of the plaintiff's property by defendants Wells and Mulrney precluded the litigation of the plaintiff's claims with respect to the claims pled in paragraphs 394 and 396 of this complaint, and is impeding this entire litigation, and violated, and continues to violate, the plaintiff's rights under the First, ~~and~~ Fourteenth, and Fourth Amendments to the United States Constitution.

B. Issue an injunction ordering defendants MHM, Bennett, George Little, Harry, Irwin, Moore, Varner, Ivicic, Bresnahan, Blicha, Gustafson, Ligas, Dr. Bloom, Sechrengost, Simmons, Keith, or their agents to:

1. Immediately arrange for the plaintiff's need for psychotherapy, additional psychiatric medication, psychological programs, or other follow-up medical treatment to be evaluated by a medical practitioner with expertise in the treatment of psychiatric disorders - any practitioner who will not fabricate medical records and accuse him of denying psychiatric treatment.

C. ~~&~~ Issue an injunction ordering defendants Bennett, George Little, Harry, Moore, Varner, Klinefelter, Irwin, Ivicic, Blicha, Gustafson, Defelice, Miller, Timothy Little, Bresnahan, Simmons, Cummins, or their agents to:

1. Immediately reinstate the plaintiff's z-code status and to keep him housed in a single cell with no threats of misconducts - authorized under the All Writs Act (28 U.S.C. §1651(a)), because the plaintiff's death resulting from violence with his cell mates will deprive the Court of ability to decide his claims pled in this lawsuit.

2. Immediately reinstate SCI-Houtzdale's recommendation for single celling for the plaintiff.

3. Immediately reinstate the plaintiff's z-code status, and to keep him housed in a single cell, with no threats of misconducts for ~~refusing~~ the plaintiff's refusing of cell mates.

D. Issue an injunction ordering defendants Bennett, George Little, Harry, Varner, Moore, Marsh, Moslak, Irwin, Blicha, Gustafson, Fiscus, or their agents to:

1. Cease the retaliatory fabrications of misconduct charges against the plaintiff, and any other misconduct documents in relation to the retaliatory misconduct charges.

2. Dismiss the retaliatory misconduct charges in relation to any claims that the plaintiff had refused cell mates.

3. Fix the misconduct record with respect to the fabricated documents that say the plaintiff had pled guilty of assaulting defendant Wells, then expunge the disciplinary convictions from the plaintiff's institutional record.

4. Release the plaintiff from punitive segregation and place him in general population, with restoration of all rights and privileges.

E. Issue an injunction ordering defendants Bennett, George Little, Harry, Varner, Moore, Klinefelter, Smith, Walker, Irwin, Gulley, Mooney, McCoy, Dyche, Buterbaugh, Matthews, Tote, Kawalyk, Morris, or them agents for James, Jones, Hardy, McDowell, Hardy, Olsen, Patrick, CO Bloom, or their agents to:

1. Ban the use of 709 restrictions against the plaintiff and prisoners likewise.

2. Cease the practice, policy, and custom of interfering with delivery of the plaintiff's mail, including opening and reading the legal mail outside of his presence.

3. Provide the plaintiff notice of non-delivery of any rejected mail, with a meaningful post-deprivation remedy.

F. Issue an injunction ordering defendants Wells and Knapp Mahney, or their agents to:

1. Return all of the plaintiff's property that they had stolen.

G. Issue an injunction ordering defendants George Little, Harry, Marsh, Klinefelter, Ivicic, Irwin, Blicha, Gustafson, Moore, Varner, McDowell, or their agents to:

1. Immediately arrange for the plaintiff to be transferred back to SCI-Houtzdale, with the defendants paying for all shipping charges of the plaintiff's property.

2. Cease the retaliatory transfering of the plaintiff.

H. Award compensatory damages jointly and severally against:

1. Defendants Ligas, Dr. Bloom, Bordas, Korb, Peacock, Eisenberg, MHM, Bennett, George Little, Harry, Varner, Moore, Klinefelter, Smith, Ivicic, Sechrengost, Bresnahan, and Keith for the physical and emotional injuries sustained resulting from the plaintiff's discontinuance of his psychiatric medication and from their failure to provide psychiatric care for plaintiff.

2. Defendants Bennett, George Little, Harry, Varner, Moore, Smith, Klinefelter, Ivicic, Blicha, Gustafson, Bresnahan, Simmons, Timothy Little, Cummins, Miller, Dedelice, Wells, Knapp, and Irwin for the physical and emotional injuries sustained

resulting from the revocation of the plaintiff's 2-code, denial of 2-code, and placement of the plaintiff into a double cell.

3. Defendants Dr. Bloom, Keith, George Little, Harry, Varner, Moore, Ivicic, Bresnahan, Smith, Klinefelter, Bennett, and Senchrengost for the physical and emotional injuries sustained resulting from their retaliatory actions of pushing back the plaintiff's psychiatric evaluations.

4. Defendants George Little, Mooney, Smith, Dyche, McCoy, Young, Korb, Rousell, Buskirk, Gondek, Bennett, Harry, Varner and Moore for the physical and emotional injuries sustained as a result of the plaintiff's beating, O.C. spraying, and sexual abuse.

5. Defendants Bennett, Varner, Moore, Smith, Klinefelter, Sechrengost, Ivicic, Jane Doe #1, John Doe #1, and Lowery for the physical and emotional injuries sustained resulting from their failure to provide medical care and decontamination for the plaintiff.

6. Defendants George Little, Harry, Varner, Moore, Walker, Mooney, Dyche, Young, McDowell, Bartley, Cartwright, Buterbaugh, Dr. Bloom, Rousell, Korb, and Buskirk for the physical and emotional injuries sustained resulting from the invasion of medical privacy.

7. Defendants Mooney, Buterbaugh, Pierce, and Peacock for the physical injuries and general damages sustained resulting/in connection with the invasion of medical privacy.

8. Defendants Bennett, George Little, Harry, Moore, Varner, Smith, Klinefelter, Mooney, Gailey, Matthews, Buterbaugh, Dr. Bloom, L.O. Bloom, Tote, Patrick, Dyche, Morris, Kawalyk, McDowell, McCoy, English, James, John Doe #2, John Doe #3, John/Jane Doe #4, Hardy, Neidwich, Keith, Jones, Cartwright, and Bartley for the general damages sustained, the loss of money the plaintiff spent on the obstructed Local Rules of Court, the deprivation of liberty and freedom to communicate with the Court by mail resulting from the plaintiff's mail interferences, and for the physical injuries sustained by the plaintiff's beating, O.C. spraying, and sexual abuse in connection with the mail interferences.

9. Defendants Bennett, George Little, Harry, Moore, Varner, Smith, Klinefelter, Mooney, Gailey, Matthews, Buterbaugh, Dr. Bloom, L.O. Bloom, Tote, Patrick, Dyche, Morris, Kawalyk, McDowell, McCoy, English, James, John Doe #2, John Doe #3, John/Jane Doe #4, Hardy, Neidwich, Keith, Jones, Cartwright, and Bartley for the general damages and deprivation of liberty and freedom to communicate with the Court by Mail and the money the plaintiff spent for the Local Rules of Court, ~~resulting~~ and for the physical injuries sustained by the plaintiff's O.C. sprayings, beating, and sexual abuse resulting from ~~~~ the denial of due process in connection with the mail interferences.

10. Defendants Bennett, George Little, Harry, Varner, Moore, Smith, Klinefelter, Mooney, Gailey, Matthews, Buterbaugh, Dr. Bloom, C.O. Bloom, Tote, Patrick, Dyche, Morris, Kawalyk, McDowell, McCoy, English, James, John Doe #2, John Doe #3, John/Jane Doe #4, Hardy, Neidwich, Keith, Jones, Cartwright, and Bartley for the general damages sustained and deprivation of liberty and freedom to communicate with the Court by mail resulting from the denial of equal protection in connection with the mail interferences, and for the physical injuries sustained by the plaintiff's ~~resulting from~~ beating, O.C. spraying, and sexual abuse in connection with the denial of equal protection.

11. Defendants Bennett, George Little, Varner, Moore, Klinefelter, Gailey, Hardy, Olsen, C.O. Bloom, McDowell, John Doe #3, and Jones for the physical and emotional injuries sustained as a result of the plaintiff's O.C. spraying and their failure to provide decontamination of the plaintiff after the O.C. spraying.

12. Defendants Bennett, George Little, Harry, Varner, Moore, Smith, Klinefelter, Mooney, Gailey, Matthews, Buterbaugh, Dr. Bloom, C.O. Bloom, Tote, Patrick, Morris, Kawalyk, McDowell, McCoy, English, James, John Doe #2, John Doe #3, John/Jane Doe #4, Hardy, Neidwich, Jones, Cartwright, and Bartley for the spoilation of evidence and potential loss of this civil action resulting from their fabrication of the Digital Master Log.

13. Defendants George Little, Varner, Moore, Harry, Bennett, Moslak, Neidwich, Bartley, Cartwright, McCoy for the punishment and loss of liberty and the damages described in this complaint, and the physical injuries sustained as a result of the fabricated misconduct report.

14. Defendants Moslak, Marsh, George Little, Harry, Klinefelter, Irwin, Blicha, Gustafson, Varner, Moore, Nunez, and Fiscus for the punishment, denial of liberty, ~~and~~ the damages described herein, ~~and~~ and the physical injuries sustained resulting from their denial of due process in connection with the plaintiff's disciplinary hearings/proceedings.

15. Defendants George Little, Harry, Varner, Moore, Moslak, Marsh, Wells, Irwin, Blicha, Gustafson, Bennett, for the stigma of being labled as an ~~assaultant~~ assaulter of staff, spoilation of evidence, potential loss of this civil action, and potential criminal charges resulting from their fabrication of the misconduct record, and for the psyical injuries sustained in segregation in connection with the plaintiff's fabricated misconduct report.

16. Defendants George Little, Harry, Varner, Moore, Klinefelter, Ivicic, Irwin, Blicha, Gustafson, McDowell, and Marsh for the stigma of being housed at a higher security prison, the money the plaintiff spent to ship his property to SCI-Forest, the denial of liberty and movement, and the physical injuries sustained from the beatings at SCI-Forest resulting from the plaintiff's transfer from SCI-Hartzdale to SCI-Forest.

17. Defendants Bennett, George Little, Miller, Harry, Varner, Moore, Irwin, Wells, Knapp, Best, John Doe #5, John Doe #6, John Doe #7, for the physical and emotional injuries sustained as a result of the plaintiff's beatings.

18. ~~George~~ Defendants George Little, Harry, Varner, Moore, Bennett, Irwin, Blicha, Gustafson, and Antonuccio for the physical and emotional injuries sustained resulting from the denial of examination and medical treatment ~~of the~~ after the plaintiff's beating.

19. Defendants George Little, Harry, Varner, Moore, Muslak, Marsh, Wells, Mohney, Bennett, Walker, Blicha, Gustafson, Lesko, Slayder for deprivation of property, the money the plaintiff spent for all his stolen books, and the loss of the plaintiff's civil claims resulting from the theft/deprivation of the plaintiff's property.

20. Defendants George Little, Harry, Varner, Moore, Walker, Lesko, and Slayder for the physical and emotional injuries sustained resulting from the misuse of force and denial of legal exchange, and denial of medical care.

21. Defendants Fox and John Doe #8 for the physical injuries and general damages sustained resulting from the plaintiff's denial of a diner tray.

22. Defendants Youngflesh, Blake, John Doe #9, Jane Doe #2, and George Little for the physical injuries, emotional injuries, and general damages sustained, and the loss of good time/commutation as a result of the plaintiff's living in inhumane prison conditions, his expulsion from SDTP, the fabricated misconduct report, and the transfer to SCI-Houtzdale.

I. Award punitive damages severally against:

1. Defendants Smith, Young, Bordas, Peacock, Eisenberg, Korb, Buskirk, Rousell, Gondek, Cartwright, Bartley, Fox, Knapp, John Doe #5, John Doe #6, John Doe #7, Pierce, Harry, George Little, Bennett, Moore, Varner, Klinefelter, Irwin, Ivicic, Blicha, Gustafson, Sechrengost, MHM, Ligas, Dr. Bloom, Defelice, Miller, Timothy Little, Cummins, Bresnahan, Simmons, Gailey, Mooney, McDowell, Jones, James, McCoy, English, Dyche, Hardy, Butterbaugh, Mattews, John Doe #1, John Doe #2, John Doe #3, John/Jane Doe #4, Neidwich, Tote, Kawalyk, Morris, Patrick, Co Bloom, Olsen, Lowery, Jane Doe #1, Keith, Wells, Antonuccio, Mohney, Walker, Marsh, ~~Finley~~ Fiscus, Lesko, Slayder, Muslak, Youngflesh, Blake, John Doe ___, John Doe ___, and Jane Doe ─ that is, against each and every defendant named in this civil action for each and every claim described in paragraphs 1 - I.1 of this complaint.

J. Grant such other relief as it may appear that the plaintiff is entitled.

. Respectfully submitted this 28th day of September , 2023.

_David R. Kauffman_

David R. Kauffman #QD9561

SCI-Forest

P.O. Box 945

286 Woodland Drive

Marienville, PA 16239

Plaintiff, pro se

## Verification

Pursuant to 28 U.S.C. § 1746, I, David R. Kauffman, declare and verify, under penalty of perjury under the laws of the United States of America, that I have read the foregoing and that it is true and correct to the best of my knowledge and belief.

Dated this 28th day of September , 2023

_David R. Kauffman_

David R. Kauffman #QD9561

## PREVIOUS LAWSUITS

485. The plaintiff has never before filed a civil suit, nor has there been previous litigation regarding any of the issues described in this complaint.

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF PENNSYLVANIA

DAVID R. KAUFFMAN

    Plaintiff,

-v-

LAURELL HARRY, et al,

    Defendants

Case No.

Hon.

CERTIFICATE OF SERVICE

David R. Kauffman declares under penalty of purjury pursuant to 28 U.S.C 1746 that on the below date he submitted the original civil rights complaint (1983) to the mail room at SCI-Forest for Electronic Case Filing with the Court and service upon the parties, by placing it in an envelope, with a cash slip attached thereon, directing Inmate accounts at SCI-Forest to deduct U.S Postage from his prison account, and giving the envelope to a guard in the RHU at SCI-Forest to place into the prison mailbox at SCI-Forest, 286 Woodland Drive, Marienville, PA 16239, on September __ , 2023.

    DATED this 28th day of September, 2023.

David Kauffman #QD9501